## NEW YORK SUPERIOR COURT.

JAMES B. WILLIAMS agt. GEORGE C. SPENCE and others.

Where the plaintiff has the right to the exclusive use of a *trade mark*, in a particular article of manufacture, any labels, devices or handbills used by the defendants which are calculated to deceive the public into the belief that the article they are selling is the article made and sold by the plaintiff, will be restrained by injunction, and the plaintiff fully protected.

*New York Special Term, July*, 1863.

APPLICATION by plaintiff for an injunction *pendente lite*, to restrain the defendants from selling, disposing of, or advertising, or offering for sale, any soap (not manufactured by the plaintiff) called and known as " Genuine Yankee Soap."

WALDO HUTCHINS, *for plaintiff*.
————— —————, *for defendants*.

MONELL, Justice. I regard the question whether the plaintiff has the right to the exclusive use of the trade mark, "Yankee Soap," adopted by him, as settled by the court in *Williams* agt. *Johnson*, (2 *Bosw.*, 1.)

It is there held that "whatever marks or devices are employed by the plaintiffs to denote that the soap was made by them, and is combined by the same skill that was employed in the making of soap theretofore made and sold by them, having the same marks and devices, are entitled to protection."

The court restrained the defendant from using the

plaintiffs' trade mark, and say "he may not use the labels or devices or handbills which he is using, nor any other like labels, handbills or devices in imitation of or simulating the labels, devices or handbills used by the plaintiffs, or any other similar labels, devices or handbills calculated to deceive the public, or create the belief that the soap he sells is the soap made or sold by the plaintiffs under the name of genuine Yankee soap."

The only question to be determined, therefore, in this case, is whether the labels, devices and handbills used by the defendants, as set forth in the complaint, are calculated to and do deceive the public into the belief that the soap they are selling is the soap made and sold by the plaintiff.

The weight of the evidence furnished by the witnesses who are acquainted with the market, and who are dealers in these soaps, is that among dealers and in the market the appellation "Yankee Soap" is known to be the soap of the plaintiff's manufacture, and all other soaps thus designated to be spurious.

The oral evidence that the labels, devices and handbills used by the defendants are calculated to deceive the public also preponderates; and an inspection of the respective labels, devices and handbills satisfies me that the public would readily be deceived, and purchase the defendants' soap under the belief that they are purchasing the plaintiff's.

Although there are some marks of dissimilarity, both in the labels, devices and handbills, yet the prominence given to the name "Yankee Soap," the inferiority of the size and shape of the cakes, the covering of tin foil, the color of the labels, the size and shape of the boxes, the almost literal adoption of the language used in the plaintiff's labels and handbills, overwhelm the small marks of difference which the defendants hoped would relieve them from the consequences of using the plaintiff's trade mark.

I am, therefore, of opinion, after a careful consideration of the evidence, that the labels, devices and handbills used by the defendants are calculated to deceive the public, and lead the unwary to believe that in purchasing the defendants' soap they are purchasing the plaintiff's.

Against such an use of the plaintiff's trade marks, as decided in *Williams* agt. *Johnson*, the plaintiffs are entitled to protection.