## SUPREME COURT.

### Enoch Morgan's Sons' Company agt. John T. Schwachhofer.

*Trade-mark — when injunction will be granted to restrain party from imitating another's label.*

No man should be allowed to sell his goods as the goods of another, nor should he be permitted so to dress his goods as to enable him to induce purchasers to believe that they are the goods of another.

Courts will interfere when it is apparent that there is an imitation of the plaintiffs' label, whether as to color, shape or inscription, which imitation is calculated and intended to deceive the general public.

Where it appeared that the plaintiffs had been for many years engaged in manufacturing *sapolio ;* that the article had acquired a great reputation and that the plaintiffs had expended very large sums of money in advertising; that the defendant after analyzing a cake of *sapolio* and ascertaining how it was made set about making an article similar in character, color and appearance to that of the plaintiffs:

*Held,* that although he might possibly have a right to do this, yet when the court finds that the defendant after having possessed himself of the secret of the manufacture of the plaintiffs has, in addition, coined a name much resembling *sapolio* in appearance and which he admits is a fancy name, having no particular derivation or signification, and has then proceeded to encase his cakes of *saphia* in wrappers also closely resembling the plaintiffs, both in their external and internal appearance as to color, size, and partially as to inscription and directions for use, the court has the power to interfere and should exercise its power.

*Held, further,* that plaintiffs are entitled to an injunction restraining the defendant from vending *saphia* in the blue package in which it is now sold.

Although it was not the intention of the court to decide that the defendant had not the right to manufacture and also sell *saphia,* nor to restrain him from the use of that name, or of the figure or device upon the label, yet it was the intention of the court that the defendant should abstain from dressing his goods in wrappers so closely resembling the plaintiffs' as to enable him to perpetrate a fraud.

*Special Term, January,* 1878.

*John Henry Hull* and *C. A. Seward*, for plaintiffs.

*Messrs. Kugelman & Stansborough*, for defendant.

LAWRENCE, *J.* — It is quite difficult, in actions of this character, to precisely draw the line between those cases in which the plaintiff is entitled to relief and those in which relief should be denied. The decisions are conflicting, and many of them irreconcilable. But in this case, after fully considering the evidence, I am of the opinion that the plaintiffs are entitled to a portion, at least, of the relief which the complaint demands.

Upon principle no man should be allowed to sell his goods as the goods of another, nor should he be permitted so to dress his goods as to enable him to induce purchasers to believe that they are the goods of another. In the consideration of this case I shall lay out of view the United States statute in relation to trade-marks, because that provides that "nothing in this chapter shall lessen, impeach or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade-mark might have had if the provisions of this chapter had not been enacted." I do not, therefore, regard the plaintiffs as being compelled, in order to obtain the relief they seek in this action, to show that there has been an imitation of the trade-mark which the plaintiffs have filed in the patent office. It would seem that the true rule is laid down in the case of *Edelsten* agt. *Vick* (23 *English L. and Eq. R.*, 51, 53), where vice-chancellor WOOD, adopting the language of lord LANGDALE in *Croft* agt. *Day* (7 *Beavan*, 84, 87), says: "That what is proper to be done in cases of this kind depends on the circumstances of each case. * * * That for the accomplishment of a fraud in each case two circumstances are required, first to mislead the public and next to preserve his own individuality." Commenting further upon the language of lord LANGDALE, in *Croft* agt. *Day*, the vice-chancellor proceeds: "Now, in that case of *Croft* agt. *Day* there was, as

lord LANGDALE said, many distinctions between the two labels; and in this case before me, just as in that of *Croft* agt. *Day,* anyone who takes upon himself to study the two labels will find even more marks of distinction than were noticed in argument. But in this case, as in that, there is the same general resemblance in color. Here there is the same combination of colors, pink and green. There is the same heading, ' Her Majesty's Letter Patent ' and ' solid-headed pins,' and the name D. F. Taylor, with the words ' exclusively manufactured ' upon the two labels, which are of precisely the same size, and the scrolls in the same form ' and exclusive patentee ' in an exactly similar curved line. Nor does it rest only with the general resemblance of the outer wrappers. The papers in which the defendant's pins are stuck bear also a great similarity; they are as like as can be to the papers in which plaintiff's pins are stuck." Then, after stating that he agrees that there must be an intent to deceive the public, the vice-chancellor holds that the defendants, both in the outer and inner wrappers, made a palpable imitation with the intent to deceive the public and he accordingly restrained them. I have referred to this case at length because it seems to me to be peculiarly in point. But there are several authorities in our own courts which uphold the same doctrine. In *Williams* agt. *Spence* (25 *How. Pr.,* 307) MONELL, J., says : " The only question to be determined, therefore, in this case is whether the labels, devices and handbills used by the defendants, as set forth in the complaint, are calculated to and do deceive the public into the belief that the soap that they are selling is the soap made and sold by the plaintiffs. * * * The oral evidence that the labels, devices and handbills used by the defendants are calculated to deceive the public, also preponderates, and an inspection of the respective labels, devices and handbills satisfies me that the public would be readily deceived and purchase the defendant's soap under the belief that they were purchasing the plaintiff's." In *Lea* agt. *Wolf* (13 *Abbott* [*N. S.*], *p.* 391) Mr. justice INGRAHAM says : " The

color of the paper, the words used and the general appearance of the words, when used, show an evident design to give a representation of those used by the plaintiffs. It is impossible to adopt any conclusion other than that the intent was to leave purchasers, from the general appearance of the article, to suppose that it was the original Worcestershire sauce which they were buying " (*See, also, Cook* agt. *Starkweather*, 18 *Abbott* [*N. S.*], *p.* 292). And in *Lockwood* agt. *Bostwick* (2 *Daly*, *p.* 521) it was held, "that a party will be restrained by an injunction from using a label as a trade-mark resembling an existing one in size, form, color, words and symbols, though in many respects different, if it is apparent that the design of the imitation was to depart from the other sufficiently to constitute a difference when compared, and yet not so much so that the difference would be detected by an ordinary purchaser, unless his attention was particularly called to it and he had a very perfect recollection of the other trade-mark." And in *Kinney* agt. *Bach* (16 *Am. Law Register* [*N. S.*], *p.* 597) Mr. justice VAN BRUNT says : " A careful inspection of the labels in question shows, beyond a doubt, that those of the defendant were adopted in order to deceive the public when they purchased the cigarettes of the defendant's manufacture." I am satisfied, from the evidence in this case, that the intention of the defendant has been from the first to make an article as nearly as possible resembling that manufactured by the plaintiffs and to put it off upon the public as the same article. I am also satisfied that it was the intention of the defendant in adopting the blue and tinfoil wrappers, and in printing on them the directions for use in language so closely resembling that employed by the plaintiffs, to impose upon the public and to lead purchasers to believe that in purchasing the defendant's article they were in fact obtaining the sapolio of the plaintiffs. In this connection the wonderful similarity of the color of the inside of the tinfoil wrapper used by the defendant with that used by the plaintiffs should not be forgotten.

The whole case, to my mind, shows an intention on the part

of the defendant to avail himself of the reputation which the plaintiffs had acquired in the market for their sapolio by their enterprise and ability and by the large expenditures which they had made in bringing the sapolio to the attention of the public.

It appears that the plaintiffs have been for many years engaged in manufacturing sapolio ; that the article has acquired a great reputation, and that the plaintiffs have expended very large sums of money in advertising. The evidence shows that the defendant, after analyzing a cake of sapolio and ascertaining how it was made, set about making an article similar in character, color and appearance to that of the plaintiffs. This he may possibly have a right to do, but when the court finds that the defendant, after having possessed himself of the secret of the manufacture of the plaintiffs, has, in addition, coined a name much resembling sapolio in appearance, and which he admits is a fancy name, having no particular derivation or signification, and has then proceeded to encase his cakes of saphia in wrappers also closely resembling the plaintiffs, both in their external and internal appearance as to color, size, and partially as to inscription and directions for use, the court has, in my judgment, the power to interfere and should exercise its power. It is claimed that the plaintiffs cannot have an exclusive right to use tinfoil or ultramarine blue-colored paper in putting up their article, as such paper is much used for ordinary commercial purposes. This is true, but the cases cited show that the courts will interfere where it is apparent that there is an imitation of the plaintiff's label, whether as to color, shape or inscription, which imitation is calculated and intended to deceive the general public. The evidence satisfies me that the blue wrapper, as used by the defendant, is calculated to deceive purchasers, and I think it is very clearly proven that the ordinary purchaser is deceived by the similarity of the dresses in which the soaps are put upon the market. A critical and careful examination of the two packages will undoubtedly reveal distinctions and differences

between the labels, and the devices thereon are different, but there is such a general resemblance that, to borrow the language of the vice-chancellor in *Edelsten* agt. *Vick* (*supra*): "The court or jury would be bound to presume that it was not a fortuitous concurrence of events which has produced this similarity. It would be irrational not to rest convinced that this remarkable coincidence of appearance, external and internal, is the result of design." In the case of *Abbott* agt. *Bakers and Confectioners' Tea Association* (*Weekly Notes*, 1872, *p.* 31) an injunction had been issued restraining the defendants from issuing wrappers which were in imitation of those of the plaintiffs. On appeal the lord chancellor said: "That though no one particular mark was exactly imitated the combination was very similar and likely to deceive ; that it was true that there was no proof that any one had been deceived, or that the plaintiffs had incurred any loss, but where the similarity is obvious that was not of importance." The appeal was, therefore, dismissed (*See case reported below* ; *The Weekly Notes*, 1871, *p.* 207). This last case seems decisive of the question now under consideration (*See, also, Lockwood* agt. *Bostwick,* 2 *Daly, p.* 521 ; *Godillot* agt. *Hazard,* 49 *How.,* 10).

I am, therefore, of the opinion that the plaintiffs are entitled to an injunction restraining the defendant from vending saphia in the blue packages in which it is now sold. By this I do not mean to be understood as holding that the defendant has not the right to manufacture and also sell saphia, nor to restrain him from the use of that name, or of the figure or device upon the label, but I do intend that he shall abstain from dressing his goods in wrappers so closely resembling the plaintiffs as to enable him to deceive the public and perpetrate a fraud. That he shall not sell saphia as and for sapolio. In other words he must sell under his own colors and not under those of the plaintiffs.

Judgment accordingly.

Findings may be settled on five days' notice.