Daniels, J.
The plaintiff and defendant are manufacturers of cigarettes in the city of New York, and the action was brought to restrain the defendant from the use of a device adopted by him as a trade-mark, upon the alleged ground that it infringed a trade-mark previously adopted and used by the plaintiff and its predecessors in the same business. The cigarettes manufactured by the plaintiff were pu"6 up in packages, upon the wrapper of which was its label, containing the words, in circular form, “Sweet Caporal.” 'These words were above space containing a cap ornamented with a device extending from the top over the side and beneath the rim of the cap. And over this upon one side was the word “Trade,” and on the other the word “Mark.” This was followed with the words “ Mild and extra fine,” below the cap, with the name of Kinney Brothers, and the place of business still beneath those words.
The defendant placed the cigarettes manufactured by him in a red colored paper box, sufficiently large to contain one hundred in number. And upon this box was his label, printed upon plain white paper, with the words, in circular form across the top, “ Sweet Coronal.” Beneath the word “Sweet” was the word “Trade,” then followed the figure of a crown, and beyond that and to the right the word “Mark.” Underneath these words and the crown were the words “Cigarettes maufactured for Oscar Mailer, New York.” This was followed by the number and location of the factory and a warning not required to be noticed. In this respect, there was no such resemblance or similarity between the wrappers used by the plaintiff upon its packages of cigarettes and that used by the defendant. And no interference with this use by the defendant of these words in this manner was directed or provided for by the judgment. So far, it in no way undertook to interfere with the defendant in *46 the packing of his cigarettes, or with the label placed upon the box.
But it was proven upon the trial, and the fact was found by the court, that each cigarette manufactured by the plaintiff was enclosed in a nice paper wrapper, And upon the middle of the cigarette, outside of this wrapper, were the words, in circular form, “Sweet Caporal.” Below these words and lengthwise of the paper was the word “Rice;” below that still the words “Kinney Bros.”
Under this name was a short line, and still below that the word “paper.” Upon the cigarettes manufactured by" the defendant, in similar circular form, were the words “Sweet Coronal,” lengthwise- of the paper, also the word “rice.” Underneath that was the name “Oscar Mailer,” and still below that, and under a more extended line than that in the plaintiff’s label, is printed the word “paper.” And below this device, and across a portion of the wrapper, is the figure of a crown. And it is this use of these words and of this device that the judgment has prohibited the defendant from employing or making. The words themselves, which have been in'this manner employed, cannot be exclusively appropriated by the plaintiff. The first of them relates only to the quality of the article, and no exclusive right to the appropriation of that word can be securéd by a manufacturer or trader in any quality or style of manufacture. This was determined in Manufacturing Co. v. Trainer (101 U. S., 51), when it was said in the opinion that the owner of a trade mark “has no "right to the exclusive use of any words, letters, figures or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and, therefore, have an equal right to employ for the same purpose.” Id., 54. And the same principle was applied in Caswell v. Davis (58 N. Y., 223), where it was said that “Words are but symbols. When they are used to signify a fact, or where, with what purpose soever used, they do signify a fact which others may, by the use of them, express with equal truth, others have an equal right to them for that purpose.” Id., 235.
The defendant was also equally entitled to print the words “rice paper” upon the paper used by him as the wrapper or case of the cigarette, for the plaintiff had acquired no exclusive right to the use of this paper, or to its denomination as rice paper, for this object. The employment of the words themselves in this manner, devoted to the defendant’s manufacture, would, therefore, be no violation' of the plaintiff’s exclusive right to this label as a trade mark.
But it appears from the continuation, location, and gen *47 eral description of the words used, for the case or wrapper of each cigarette, that the defendant in the employment of the words selected by him, has endeavored in appearance to imitate the label adopted and used by the plaintiff. This will appear from the form and manner in which the words lines, and location and character of the printing are used in the respective labels. That employed by the plaintiff lengthwise of the cigarette is in the following form:
SWEET CAPORAL
BICE
378 KINNEY BROS.,
PAPEB.
While that employed by the defendant in the same manner, is in this form:
SWEET CORONAL
BICE
OSCAR MALLER,
PAPEB.
And a casual or inattentive observer, as most purchasers are, would be very likely to accept one in place of the other. Purchasers, or persons, using these cigarettes, and desiring to obtain those manufactured by the plaintiff, might very well in this manner accept and purchase the defendant’s manufacture, in place of the plaintiff’s. His cigarettes having this label on each wrapper, were sold from the box, while each of the plaintiff’s cigarettes had the label upon its wrapper, or case, as they were put up in the packages, of tens, or twenties, for the purposes of sale. In selling from the box used by the defendant, and containing one hundred cigarettes, purchasers in this manner, would ordinarily be deceived, for they would not be expected or inclined to look closely at the label upon the wrapper of the cigarettes to ascertain whether it was that of the plaintiff or of another manufacturer. And in this manner the plaintiff could well be defrauded out of a corresponding portion of its trade. It is by this peculiar form, combination and location of the words, rendering one label, a close resemblance of the other, that deception and injury would be caused. And when that is the nature of the device resorted to, although the defendant may employ the words he has the legal right to select and use, yet he violates the right of the plaintiff by so printing, placing and and arranging them as to produce the conclusion that the manufacture is that of the other party.
That under the legal rule applicable to this case, is an infringement of the plaintiff’s exclusive right to the use of its trade-mark. For by the peculiar location of the words, and the general form of the defendant’s label, he has given it the appearance of the label of the plaintiff. And the deception could only be removed by close observation and inspection. And when that may appear to be the fact in the case, there the plaintiff has the right to appeal to the court to restrain such a composition anil use of the defend *48 ant’s label as will be calculated to deceive the plaintiff’s customers. Colman v. Crump, 70 N. Y., 573; Morgan’s Sons Co. v. Troxell, 89 id., 292. And to the extent necessary to prevent that and only to that extent, is the plaintiff entitled to relief against the defendant in this action.
It is not entirely clear from the judgment that it was intended to extend farther than the awarding of this specific relief, but it has not been expressed so as clearly to describe and define this object. What the judgment should do by way of restraining the use of the label employed by the defendant, is such a combination and form of the words, and line as will colorably resemble the form of the words, and line in the plaintiff’s label. For this purpose the defendant’s label must be changed and changed in such a manner, even though the same words aré still employed in it, as to clearly distinguish it in the location of the words, the size of the type, and the general appearance of the label, from the label used .by the plaintiff, and when that shall be done the defendant will be entitled to the use of his label, employing the same words, if he desires to do so, upon his cigarettes, but avoiding such a general resemblance in form, combination of words, and the manner in which they are printed upon the wrapper, as will lead ordinary purchasers to buy his cigarettes in the belief that they are the manufacture of the plaintiff.
It is probably needless to add that the fact of the plaintiff deriving its right to use the wrapper by assignment from the successors of Kinney Brothers, is sufficient to entitle it to the protection applied by the courts to cases of this description. This was so held in Merry v. Hoopes (111 N. Y., 415; 19 N. Y. State Rep., 379).
The judgment from which the appeal has been taken, should be modified, limiting its restraint to the use of the label by the defendant, to such a location, and combination of the words upon it and of the type composing the words as will not create a deceptive resemblance to the label of the plaintiff. And, as so modified, the judgment should be affirmed, without costs to either party.
Van Brunt, Oh. J., concurs.
Appeal from a judgment at special term.
Samuel J. Crooks, forapp’lt; Oudin & Oakley, for resp’t.
Brady, J
The plaintiff: uses as a trade mark, stamped upon each cigarette sold by him what is shown by exhibit A., and the defendant by what is shown by exhibit B., and they are herein placed in contiguity:

Exhibit “A.”

SWEET CAPORAL,
BICE
587 KINNEY BROS.,
PAPER.

Plaintiffs.

Exhibit “B.”

SWEET CORONAL,
BICE
OSCAR HALLER,
PAPER.

Defendants.

*49 The plaintiff succeeds to the ownership of the trade mark by purchase, and there is no doubt about its title. The defendant sells his cigarettes in boxes containing a hundred of them, but upon each one is the device shown {supra.) He calls them “ Sweet Coronal” and it would seem for the purpose of imitating the sound, as near as he could design it, of “Sweet Caporal,” and as well the appearance on the cigarette stamped Sweet Caporal which it resembles and which might readily, without close examination, be mistaken for it. Of this similitude the plaintiff complains, and justly. It is impossible to reject the proposition as valueless, that the defendant did not intend to so prepare his cigarettes for sale that they might be sold for Sweet Caporal a brand popular and in great demand. If such were not his intention, and if he designed to compete on fair terms-with the plaintiff, why print upon his cigarettes the name of them in type and general characteristics so closely resembling those of the plaintiff. There are many devices which he might have adopted in different type; in different ink; in different form and setting which would have shown that he relied upon the merits of his own production and designed to succeed upon them and not upon invading the realms of another already established in business, and legitimately. It is very evident whatever the form or color of the box he employs may be when the cigarette is removed or taken from it, it suggests Sweet Caporal by the imprint to which reference has been made. This is what the protection given to trade marks is particularly intended to prevent, namely: deceit of the people using the article simulated. When the conclusions expressed are adopted upon inspection of the different articles and marks upon them, the duty of the court to restrain the apparent violation of good faith is imperative unless indeed there is no trade mark to which the plaintiff has exclusive claim.
Such is not the case here. It has been repeatedly held, that a word in common use may be so employed as to create a property in such use. ’ Here Caporal was adopted to distinguish the plaintiff’s manufacture from that of others, and this created in it a special property for that particular purpose. The whole language, indeed all languages, are open to the enterprise of business men, and they may by skillful or successful use of words in them gain notoriety, exclusive use for a particular article and great pecuniary advantages. The learned justice presiding in the court below felt controlled by these principles, and, therefore, disposed of the question presented to him in a brief opinion based upon the following authorities: Kinney v. Basch, 16 Am. L. Reg. (N. S.), 596; Colman v. Crump, 70 N. Y., 578; Edleston v. Vick, 23 E. L. & Eq., 51; Croft v. Day, 7 Beav., 84; Morgan v. Schwachofer, 5 Abb. N. C., 265; Lea v. Wolf, *50 13 App. (N. S.), 391; Lockwood v. Bostwick, 2 Daly, 521; Williams v. Spence, 25 How., 367.
To these may be added that of Selchow v. Baker (93 N. Y., 59, 69), in which it was said: “ Our conclusion is that' where a manufacturer .has invented a new name, consisting •either of a new word or a word or words in common use, which he has applied for the first time to his own manufacture, or to an article manufactured for him to distinguish it from those manufactured and sold by others, and the. name thus adopted is not generic or descriptive of 'the; •article, its ingredients or characteristics, but is arbitrary or fanciful, and is not used merely to denote grade or quality, he is entitled to be protected in the use of that name.”,
■ This proposition is answered by the observation thatYH® trade-mark cannot be the name of the article itself. It iá ■supposed that this means that Caporal is the name of the; tobacco of which it is composed, but this is a designation, not generic or descriptive of the article, its ingredients or characteristics, but is fanciful, the word itself being French and denoting a soldier or a non-commissioned officer of the French army. It may be further said that the observation made by the vice-chancellor in Edleston v. Vick (23 Eng. L. & Eq., 51, 53), is appropriated here as already suggested, namely:
“The court or-jury would, in such a state of things, be bound to presume that it was not a fortuitous occurrence -of events which has produced this similarity. It would be irrational not to rest convinced that this remarkable coincidence of appearance external and internal is the result of design.”
. The'judgment appealed from should be affirmed, with costs and disbursements,- and without any further discussion. There are, it may be said, too many refinements presented in the multitudes of decisions relating to the use of trade marks, refinements which frequently result in following a spirit of piracy not at all commendable and adverse to the culture and encouragement of honest competition. The inquiry should be mainly as to the intent, which will rarely be found worthy when there is a close resemblance to the symbols used in an established business.