D. RANSOM, SON & CO., Respondents, *v.* ALVIN M. BALL, Appellant.

*Supreme Court, Fifth Department, General Term, October 19, 1889.*

*Trade-mark. Fraud.*—The use or continuance of a trade-mark, which is not in itself a fraud, nor manifests any intentional or actual fraud upon the public, will not deprive the owner of the legal right to restrain an infringement.

Appeal from a judgment entered on the findings and decision of the court at special term.

*F. S. Perkins*, for appellant.

*N. Morey*, for respondent.

DWIGHT, J.—The action was to restrain the defendant from infringing the plaintiff's trade-mark, employed upon the wrappers of a proprietary medicine. The fraud of the defendant in pirating the name of the medicine, the language in which it was described, the directions for its use and the engraved design of the wrappers in which it was sold, was bold and barefaced. There is no attempt to deny or excuse

it. The only defense alleged is that the plaintiff corporation had no right which the defendant was bound to respect or which a court of equity will interfere to protect, because its trade-mark was itself a fraud upon the public. This charge is founded upon two specifications, viz.: 1st, that the plaintiff's label falsely described the medicine as " prepared by Dr. J. R. Miller," and 2d, that the use of the word " magnetic" in the name of the medicine was without foundation, in fact.

We do not think that the facts presented under either or both of these specifications support the charge of fraud against the plaintiff. The medicine was originally prepared and sold by one J. R. Miller, who had either assumed, or acquired from his business, the title of " doctor." He had sold the formula of the preparation, the good-will of the business, and the trade-mark or the name under which the medicine had been sold, to the plaintiff.

The outer wrappers of the plaintiff's bottle bore the words, plainly printed, " Prepared and sold by D. Ransom, Son & Co., Prop'rs, Buffalo, N. Y." It was on an inner wrapper only, directly beneath the directions for the use of the medicine, that the words were printed, " Prepared by Dr. J. R. Miller." We think it did no violence to the facts to say that these words intended that the medicine was *originally* prepared by Miller, or even, as the judge at special term was inclined to think, that the *directions* were prepared by Miller. An intention to defraud by these means can hardly be imputed to the plaintiff when we see that it took pains to inform purchasers of the actual facts by the inscription on the outer label, while the inscription complained of was concealed until after the medicine was purchased and the outer wrapper removed. As for the use of the prefix " Dr." to Miller's name, it must be said that the title is too common and too indefinite in its meaning to be likely to deceive anybody. It is as freely used as that of " Professor," and means as little.

The medicine bore the name of "Miller's Universal Magnetic Balm." It is not pretended that the liquid possessed any of the properties of magnetism in the scientific sense of the word, nor do we think it clear that the use of the word "magnetic," in its title, was intended to deceive the public in that respect. The word, so far as any meaning was attached to it, was probably used rather in a figurative than in a literal or scientific sense, and there was but little danger of its being misunderstood. There is no evidence in the case which, as we think, would have justified the finding that, in continuing the use of the name under which the plaintiff bought the right to manufacture and sell Miller's preparation, it was guilty of any intentional or actual fraud upon the public which deprives it of the right to the protection of the law in the use of its property.

The judgment should be affirmed.

BARKER, P. J., and CHILDS, J., concur.

NOTE ON "TRADE-MARK."

As to the facts required to maintain an action to enjoin an infringement of a trade-mark, see T. A. Vulcan *v.* Myers, 58 Hun, 161.

A trade-mark in the illustrations in a book or story cannot be established. Munro *v.* Smith, 55 Hun, 419.

The adoption of a fanciful and arbitrary name, to distinguish a publisher's works from others, will be protected. Munro *v.* Beadle, 55 Hun, 312.

Any imitation, tending to mislead the public is an infringement. Id.

As to what constitutes an infringement of a trade-mark in the title of a publication, see Stokes *v.* Allen, 56 Hun, 526.

The words "International Banking Co." cannot be exclusively appropriated as a trade-mark or place of business. Koehler *v.* Sanders, 122 N. Y. 65.

The facts in this case, were held not to show any fraud on the public, which will deprive the plaintiff of a right to protection in the use of his property. Ransom, Son & Co. *v.* Ball, 54 Hun, 635.

The words "Compressed Yeast" are not the subject of a trade-mark. Fleischman *v.* Newman, 53 Hun, 641.

The form of a package cannot be appropriated so as to exclude others from using it. Id.

An assignee is entitled to restrain such composition and use of his label as is calculated to deceive his customers. Kinney T. Co. *v.* Maller, 53 Hun, 340.

Whoever has a right to manufacture a patented article, may use the patent name without liability. Waterman *v.* Shipman, 55 Hun, 611.

The facts, in this case, were held to establish the conclusion that the label or trade-mark was intended to, and did, pass as an incident to the property. Prince Mfg. Co. *v.* Prince M. P. Co., 60 Hun, 583.

A person may use his own name in business or state that he is a certain person's son, or that he is late of a certain firm. Ward & Co. *v.* Ward, 61 Hun, 625.

The vendor of the business and good-will, in the absence of an express agreement to the contrary, may solicit patronage from the old customers. Id.

A private mark, used for office convenience and employed only to indicate a particular size of paper, does not constitute a trade-mark. Id.

The right to use a name for a publication or reproduction cannot be infringed or invaded. Stokes *v.* Allen, 19 N. Y. St. Rep. 58.

The exclusive right to use a firm trade-mark passes to a partner on purchasing and succeeding to the firm business, without any mention of them in the transfer. Merry *v.* Hoopes, 111 N. Y. 415.

The manufacturer is entitled to an injunction to restrain advertising and selling goods as his, which are of a different manufacture, and of an inferior and different quality. Priestley *v.* Adams, 59 Hun, 380.

The court will not protect by injunction, in an action by a publisher, a *nom de plume* originated in connection with a series of publications. Munro *v.* Tousey, 59 Hun, 621.

An injunction will not lie, though the infringing party has made an assignment, so long as the business is conducted under his supervision and directly or indirectly for his benefit. Id.

A judgment in an action by the author preventing another from using such name, is not *res adjudicata* of the publisher's claim. Id.

The doctrine of laches will not apply, unless the publisher knew of the infringements and acquiesced in them. Id.

As to when an injunction to restrain the use of a trade-mark, will be refused, see Munro *v.* Smith, 36 N. Y. St. Rep. 841.

As to when a mere similarity of names is not sufficient to authorize a preliminary injunction, see Foster *v.* Webster P. Co., 59 Hun, 624.

As to when a preliminary injunction will be granted to restrain the use of a trade-mark, see Baeder *v.* Baeder, 52 Hun, 170.

The inventor is entitled to an injunction to protect a secret device not disclosed by the publication of the invented article. Tabor *v.* Hoffman, 118 N. Y. 30.

The ease of discovering the secret does not affect the principle. Id.

The court cannot prohibit the defendants from using the signs, labels, bottles and bottle molds bearing the firm name, which have been sold to them by the plaintiff. Caswell *v.* Hazard, 121 N. Y. 484.

An injunction order, restraining defendant from inserting in newspapers advertisements denying the plaintiff's right to use a certain trade-mark, was held to be a substantial denial of the defendant's right to use the designation. Prince Mfg. Co. *v.* Prince's Met. P. Co., 51 Hun, 443.

The use of a business name, which, by its similarity, is likely to produce a confusion in the minds of an ordinary, unsuspecting person, will be restrained. Richardson & Boynton Co. *v.* R. & M. Co., 55 Hun, 606.

The principle was enunciated as to restraining the infringement of trade names, in Forney *v.* E. N. & P. Co., 57 Hun, 588.

The circumstances of this case were held not to entitle the party to enjoin the use of the trade name. Wormser *v.* Levy, 35 N. Y. St. Rep. 78.

Equitable relief will not be granted in support of a misrepresentation of the nature of a business in fraud of the public. Koehler *v.* Sanders, 122 N. Y. 65.

In Babbett *v.* Brown, 58 Hun, 609, an injunction *pendente lite* to restrain the use of a printed wrapper in packing and selling soap was held to be unsustained.

An injunction *pendente lite* will not be granted, where the title pages, though somewhat similar, contain marked differences in the location and color of objects thereon. W. J. Johnson Co. *v.* E. A. P. Co., 60 Hun, 578.

In Munro *v.* Tousey, 129 N. Y. 38, the plaintiff, by the appropriation and use of the name "Old Sleuth" to designate his serial publications of detective stories, was held not to have acquired a property right in the word "Sleuth," which the law will protect in case of its use by others in entitling works of fiction, especially where there is no proof of an intention on their part to defraud, and no similarity as to the covers or pictorial illustrations by which a purchaser may be misled.

A phrase which is no more nor less than a description of the compound itself, resulting from the name of the principal article used in its production, is incapable of exclusive appropriation by any party making the compound. Keasbey *v.* Brooklyn Chem. Works, 61 Hun, 627. If the article has been manufactured from ingredients principally included within the acquired meaning of the phrase, the manufacturer has no exclusive right to its use arising out of the manufacture of the article to which it has been applied by him in the course of his business. Id. As to names which are descriptive of the article itself, when a manufacturer has given to his products a new name invented by himself for the purpose of distinguishing them as his, and the article becomes generally known to the trade and to the public by that name, the name becomes public property and every one has a right to use it. Id.

A trade-mark may be acquired in the words "Nickel-in" to designate a brand of cigars. Schendel *v.* Silver, 63 Hun, 330. Such combination is not in any manner descriptive of the article, does not denote a grade or quality, and is purely arbitrary and fanciful. Id.

In the case of Selchow *v.* Baker, 93 N. Y. 59, it was held that the manufacturer, who has invented a new name consisting either of a new word, or of a word or words in common use which he has applied for the

first time to his own manufactures, or to articles manufactured for him, to distinguish them from those manufactured and sold by others, if the name is not generic or descriptive of the article and not used to denote grade or quality, but is arbitrary and fanciful, is entitled to be protected in its use, even though it has become so generally known as to be adopted by the public as descriptive of the article.

As to what resemblances between the imitation and the original trademark are necessary to authorize an injunction, see Fisher *v.* Blank, 46 N. Y. St. Rep. 101, and cases therein cited.