## PACIFIC IRON WORKS vs. GEORGE T. NEWHALL.

The plaintiffs agreed to manufacture and sell to the defendant for his use in his business, a steam engine with a cut-off known as " Green's Patent Cut-off," for which they represented that one Green had a patent, and that they had a license from him to make and sell the same, and that the same would be of great value to the defendant in connection with the engine, all which representations were true. The whole was to be for one agreed price, for which the defendant gave his notes when the engine was delivered. After he had used it for a few months another person claimed the cut-off to be an infringement of his own prior patent and obtained an injunction against its use by the defendant. Held that there was a failure of consideration to the extent of the value of the cut-off to the defendant in connection with the engine, and that that amount should be deducted from the price.

The sale of an article, purchased for a particular purpose, communicated at the time to the vendor, implies a warranty that the article shall reasonably answer the purpose for which it was purchased.

And here the law would infer a warranty that the defendant would have the right to use the cut-off in connection with the engine.

The plaintiffs made certain representations as to the cut-off, and afterwards submitted certain proposals in writing for the manufacture of the engine with the cut-off, which proposals, with some modification, were accepted by the defendant, he being induced to do so by the representations.   Held that the written proposals were not the entire evidence of the contract, but that the contract was to be regarded as a parol one, and that the representations might be proved.

BILL for the foreclosure of a mortgage of a steam engine and appurtenances, brought to the superior court in New Haven county, by the petitioners, who were a joint stock corporation.   The following facts were found by the court upon the bill and answer.

In the year 1860 the petitioners were manufacturing at Bridgeport stationary steam engines, and the respondent was manufacturing carriages at New Haven by steam power. The respondent having occasion to purchase a steam engine, went for that purpose to the petitioners' manufactory.  · They there represented to him that they were manufacturing stationary steam engines ; that one N. T. Green, of Rhode Island, held letters patent from the United States for an automatic or adjustable cut-off for regulating the admission of steam to engines ; that they had a license from the patentee to apply his invention to engines constructed by them ; that the invention was valuable and economical, and that it would be especially so to the respondent, as the demands of his establishment upon the power of an engine were irregular and variable, and that, by the use of the invention, the respondent could obtain the power necessary for his manufactory, with a much less expenditure for coal than by the use of any other device for regulating the admission of steam to engines.   And they subsequently submitted the following written proposal to the respondent :—

" The Pacific Iron Works hereby propose to build and furnish for George T. Newhall, of New Haven, one stationary steam engine of the style and kind known as ' Green's patent cut-off,' and of the following dimensions, viz. : diameter of cylinder 15 inches—length of stroke 42 inches—diameter of balance wheel 12 feet—50 horse power ; the same to be manu-

factured of good material, and perfect in workmanship. We are to furnish all necessary steam pipe to connect the same with his present boiler, a heater, exhaust pipe to connect the engine and heater, and from heater to his present pipe which passes around his shop. We are to deliver all on board the cars at Bridgeport, furnish a man to set up the engine and make the connections of steam and exhaust pipe, and put the engine in perfect running condition, they to find help and pay board and fare ; for and in consideration of the sum of $2,500, payable in four notes of 8, 12, 16 and 20 months from date of completion of the work, with interest."

This proposal was accepted by the respondent, except as to the time of payment, which was changed by agreement. He was induced so to do by the representations aforesaid as to the cut-off.

An engine was completed and set up on the respondent's premises in New Haven by the petitioners, in accordance with the terms of the proposal, in the month of December, 1860 ; and the respondent then gave his promissory notes to the petitioners, and secured the same by mortgage, as stated in the petition.

The respondent used the engine from December, 1860, to the third day of June, 1862, when he was enjoined against using the Green cut-off thereon, by a process issuing out of the United States Circuit Court in the district of Connecticut, upon the prayer of one Corliss, setting forth that Green's patent was an infringement of his own. The respondent then used another device for regulating the admission of steam to the engine, until the 7th day of November, 1863, when he purchased of Corliss the right to restore the Green cut-off to his engine, and did restore the same.

The representations of the petitioners to the respondent as to the issuing of letters patent by the United States to Green, as to their license from him to apply his invention to steam engines constructed by them, as to the value and economy of the invention, and as to the saving of coal from the use of the invention were all true.

There is due from the respondent to the petitioners the

sum of $3,759.57 upon the notes. The respondent suffered damage to the amount of $800 by reason of his being deprived of the use of Green's cut-off, which sum the respondent claims the right to set off by way of recoupment against the amount due upon his note. The petitioners deny the right of the respondent to recoup his damages.

Upon these facts the case was reserved for the advice of this court.

*C. Ives* and *Alling*, for the petitioners.

1. The acceptance by the respondent of the petitioners' written proposal reduced the whole contract to writing, and this instrument is therefore the best and only evidence of the original agreement. The previous representations of the petitioners are found to be true, but they form no part of the contract. *Randall* v. *Rhodes*, 1 Curtis, 90; *Whitmore* v. *South Boston Iron Co.*, 2 Allen, 52, 58; *Van Ostrand* v. *Reed*, 1 Wend., 424; *Galpin* v. *Atwater*, 29 Conn., 93.

2. The finding of facts does not show that the title to the Green patent ever failed. If this were the case the respondent might and should have proved it. *Rich* v. *Atwater*, 16 Conn., 409; *Sherman* v. *Champlain Transportation Co.*, 31 Verm., 162; *Case* v. *Hall*, 24 Wend., 102.

3. The written contract contains no warranty of the validity of Green's patent. *Bull* v. *Pratt*, 1 Conn., 342. The contract provides, on the one part, that the petitioners should " build and furnish " the respondent with " one stationary steam engine of the style and kind known as ' Green's patent cut-off,' " and on the other part, that the respondent should accept and receive such an engine, and pay therefor twentyfive hundred dollars. When the petitioners had furnished the respondent with such an engine, they had fully performed all their part of the contract, and were thereafter subject to no further liability. *Chanter* v. *Hopkins*, 4 Mees. & Wels., 399; *Prideaux* v. *Bunnett*, 1 Com. Bench, *N. S.*, 613; *Whitmore* v. *South Boston Iron Co.*, 2 Allen, 52. The written contract, therefore, by its own terms, negatives the presumption of even an implied warranty of the patent title.

" *Expressum facit cessare tacitum.*" Chitty on Cont., 25 ; *Whiting* v. *Sullivan*, 7 Mass., 107 ; *Dutton* v. *Gerrish*, 9 Cush., 89.

4. In the sale of a patented article there is no implied warranty of the validity of the patent title, particularly where the vendor is not the patentee ; and in the absence of fraud, or express warranty, the seller is not liable in any way whatever. *Hyatt* v. *Twomey*, 1 Dev. & Bat., 315, 318 ; *Canslear* v. *Eaton*, 2 Jones Eq., 499 ; *Hall* v. *Conder*, 38 Eng. Law & Eq., 253 ; *Barkhampsted* v. *Case*, 5 Conn., 528 ; *Lester* v. *Palmer*, 4 Allen, 145. The doctrine of an implied warranty of title on the sale of personal property in the possession of the vendor, is based upon two presumptions. First, that the possession of the vendor is equivalent to an affirmation of title. *Artcher* v. *McCoy*, 3 Barb., 323. There is no implied warranty when the vendor is not in possession. *Artcher* v. *McCoy*, supra ; *Edick* v. *Crim*, 10 Barb., 445 ; Story on Sales, sec. 367, note 5. Second, that such a vendor is acquainted with the defects of his own title, while the vendee is ignorant of them ; and therefore it is deceit in the seller, if he conceals the invalidity of his title from the knowledge of the purchaser. *Artcher* v. *McCoy*, supra ; *Hoe* v. *Sanborn*, 21 N. York, 552. Neither of these presumptions is applicable to the transfer of a patent right attached to an article of personal property, which article is the subject matter of a sale ; more especially when the vendor is not the patentee. For, first, the possession of a patent is equivalent only to an assertion that the United States have granted to the patentee the right to claim and enjoy the supposed invention as his own. Nor can the vendor of a patented article, not the patentee, be deemed in any way to own or possess the perfect and absolute right to the supposed invention, but only the individual right of the particular patentee. Besides, a patent right is intangible, incorporeal in its character, and possession can not be predicated of it. *Hyatt* v. *Twomey*, 1 Dev. & Bat., 315. Second, the vendor of a patented article does not assume to sell all possible rights and claims to the patented device, but only the special rights and claims of the admitted patentee. *Hall* v.

*Conder*, 38 Eng. Law & Eq., 253 ; *Kintrea* v. *Preston*, 37 id., 556. There is no implied warranty of title where the subject matter of the sale is merely the vendor's title, and not the thing itself. *Sherman* v. *Champlain Transportation Co.*, 31 Verm., 162. And, third, the law cannot presume, in the sale of a patented article, the knowledge of the vendor, (especially if not the patentee,) or the ignorance of the vendee, in respect to the validity of the patent title, since the means of knowledge are equally open to both parties, and each acting in good faith towards the other relies on his own judgment. *Gates* v. *Winslow*, 1 Mass., 65 ; *Barnum* v. *Barnum*, 8 Conn., 469 ; *Myers* v. *Turner*, 17 Ill., 179 ; *Hall* v. *Conder*, 38 Eng. Law. & Eq., 253. In such a case good faith does not require the implication of a warranty. *Artcher* v. *McCoy*, 3 Barb., 323.

5. If the petitioners are compelled to indemnify the respondent for the loss arising from a supposed failure of the patent title, there would be no remedy over in favor of the petitioners against the patentee. *Hyatt* v. *Twomey*, 1 Dev. & Bat., 315 ; *Taylor* v. *Hare*, 4 Bos. & Pul., 260.

6. The claim of the respondent, if allowed, throws all the risk on the seller, and violates the common law principle of *caveat emptor*.

7. It was held in the following cases that there was no implied warranty, and in each of them there was more reason to decide in favor of such a warranty than there is in this case. *Chandelor* v. *Lopus*, Cro. Jac., 4 ; *Seixas* v. *Woods*, 2 Caines, 48 ; *Holden* v. *Dakin*, 4 Johns., 421 ; *Swett* v. *Colgate*, 20 id., 196 ; *Hotchkiss* v. *Gage*, 26 Barb., 141 ; 1 Smith Lead. Cas., (H. & W. notes,) 238.

*Doolittle* with whom was *Sheldon*, for the respondent.

1. A sale of a chattel is the agreement of the parties that the *property* in the subject matter shall pass from the vendor to the vendee, for a consideration given or promised to be given by the vendee. 1 Parsons on Contracts, 435. No definition of property can be found which does not include the right of *private use and enjoyment*, as well as the power of dis-

HARVARD LAW SCHOOL LIBRARY

position and sale. Tomlin's Law Dic., *Property;* 2 Bla. Com., 34. Property is the highest right a man hath or can have to anything. Jacob's Law Dic., *Property*. Material objects, therefore, are property in the true sense, because they are impressed by the laws and usages of society with certain qualities, among which are, fundamentally, the right of the occupant or owner to use and enjoy them *exclusively*, and his absolute power to sell and dispose of them; and as property consists in the artificial impression of these qualities upon material things, so whatever removes the impression destroys the notion of property, although the things themselves may remain physically untouched. Thus Blackstone says, (1 Com., 138,) " The third absolute right of every Englishman is that of property, which consists in the free *use, enjoyment,* and disposal of all his acquisitions." Chancellor Kent says, (2 Com., 320,) " The exclusive right of *using* and transferring property follows as a natural consequence from the perception and admission of the right itself." Bouvier, in his Law Dictionary, title *Property*, defines property as an exclusive right to things, containing not only a right to *use* those things, but a right to dispose of them. These definitions are in accordance with the general sense of mankind, and have everywhere received the sanction of judicial approbation. The case finds that the respondent was restrained by a court of exclusive jurisdiction from the *use* of the machine attempted to be sold by the petitioner. The government of the United States had granted to another person (Corliss) the *exclusive* right to make, vend, and *use* such a machine for the period of fourteen years from the date of the grant. The petitioners, not having acquired the right from Corliss or his assignee to make such a machine, did not have the entire property in the machine that they attempted to sell the respondent. They therefore could make no valid agreement that the *property* should pass from them to the respondent. It was not in their power to make a valid sale of the machine. They contracted that the *property* in the machine should pass to the respondent. Their agreement was the consideration of the respondent's promise. To the extent that that considera-

tion has failed, they must fail to recover. *Andrews* v. *Wheaton*, 23 Conn., 112; *Gold* v. *Ives*, 29 id., 119; *Avery* v. *Brown*, 31 id., 398.

2. In every sale of a chattel the law implies a warranty of the title. The government had granted to Corliss the *exclusive* right to make a machine of this construction. It was a violation of this *exclusive* right vested in Corliss for the petitioners to make this machine, and they could acquire no legal title to an article which they had no right to make, or use, or vend. They therefore could transfer none. The respondent contracted for this right of property,—the right to the exclusive use of this machine. He has failed to obtain it. His defense, therefore, would be perfect in a court of law.

3. But the petitioners have come into a court of conscience, and ask that court to help them recover payment for this machine which they had no right to make, no right to use, and no right to sell; and payment too from this respondent, who has been restrained by a court of competent and exclusive jurisdiction from its use, until he would buy and pay the true owner for the very right which he bought of these petitioners.

4. The court will observe that this is not the case of the sale of a void patent, or an article made under a void patent, but it is an article made not only under a void patent but in violation of a patent granted to another. It is to be observed also that it is a sale of a material thing, the subject of corporal use, and is not the sale of an invisible incorporeal right, as a patent. And yet, if it was the sale of a patent which was void for any reason, no matter what, and when the patent was not in contravention of the rights of others, no recovery could be had. *Bliss* v. *Negus*, 8 Mass., 46; *Cross* v. *Huntley*, 13 Wend., 385; *Head* v. *Stevens*, 19 id., 411; *Stevens* v. *Head*, 9 Verm., 174; *Geiger* v. *Cook*, 3 Watts & Serg., 266; *Bellas* v. *Hays*, 5 Serg. & R., 427; *Kernodle* v. *Grant*, 4 Blackf., 57; *Jolliffe* v. *Collins*, 21 Miss., 338; *Darst* v. *Brockway*, 11 Ohio, 462; *Nye* v. *Raymond*, 16 Ill., 153; *Buss* v. *Putney*, 38 N. Hamp., 44; *Wilder* v. *Adams*, 2 Wood. & Minot, 329; *Ollivant* v. *Bayley*, 5 Adol. & El., *N. S.*, 288; *Bannerman* v. *White*, 10 Com. Bench, *N. S.*, 844;

Curtis on Patents, sec. 199; *Peck* v. *Farrington,* 9 Wend., 44.

HINMAN, C. J.    This is a bill to foreclose a mortgage upon a steam engine and the machinery connected therewith. The mortgage was made to secure certain notes to the petitioners, the consideration of which was the sale to the respondent of the engine in question. The petitioners furnished the respondent with the engine under a contract for that purpose. They were manufacturers of engines, and they represented that they were manufacturing them with an automatic or adjustable cut-off, of which one N. T. Green held letters patent; that they had a license from him to apply the cut-off to engines constructed by them; that the invention was valuable, and would be especially so to the respondent in his manufactory; and they subsequently submitted to the respondent a proposal in writing to build and furnish him an engine of the style and kind known as Green's patent cut-off, of certain dimensions, for the sum of twenty-five hundred dollars, for which notes were to be given. This proposal was accepted and the engine furnished, and the notes with the mortgage in question were given therefor. It now appears that Green was not the inventor of the cut-off, and the respondent has been enjoined against using it by process issuing from the Circuit Court of the United States upon the application of one Corliss, who appears to be the inventor and the rightful patentee, and upon whose invention the patent issued to Green is an infringement; and the respondent, by reason of being deprived of the use of the cut-off so furnished him, is found to be injured to the amount of eight hundred dollars, which sum he claims the right to off set against the notes by way of recoupment. The equitable right of the respondent to this deduction upon the notes is quite obvious, unless there is some stubborn rule which cannot be overcome to prevent it. This cut-off, as it is called, is, we suppose, an adjunct to the engine, which may be used or not according to the pleasure of the owner, and as such is entirely distinct from the engine;

and the value of it admits of estimation as much as any other machine.

The petitioners claim that the contract between the parties was reduced to writing in the proposals which were accepted by the respondent, and that the representations made previously to these proposals are not proper to be proved as any part of the case. We think this claim not well founded. The contract itself was never reduced to writing. The acceptance of the proposals does not appear to have been in writing. The proposals seem rather to have been intended to give the terms upon which they would manufacture for the respondent an engine of a certain description, and to give the dimensions of the different parts, and the power of the machine, with more precision and detail than could easily be remembered in so complicated a machine, and not as a statement of all the terms of the contract itself. Had it been intended as the only evidence of the contract it would have been signed by the parties. It was therefore merely the proposal of the terms upon which they would build for the respondent an engine such as they had previously represented that they were manufacturing and of the style and dimensions mentioned in the writing. But even in the writing they describe the engine as being known as " Green's patent cut-off." We have no doubt therefore that the contract was by parol, and as it is expressly found by the court to have been induced by the representations made previously to the proposal, the petitioners ought to be bound by those representations as a part of it. The cases, therefore, which are cited by the petitioners, to show that an agreement afterwards reduced to writing can be proved only by the writing, have no application here.

Taking the representations then as a part of the case, it appears that there was a sale of an engine to be used by the respondent in his manufactory, with a cut-off invented and patented by Green, which the petitioners were licensed by him to attach to the machine, and the respondents would have the right to use. Of course the cut-off would be wholly useless unless the respondent had the right to use it, and although this right is not expressly given by the terms of the

contract, yet the fact that it was purchased by the respondent and manufactured by the petitioners for use in the respondent's manufactory, necessarily implies it. Especially is this so when taken in connection with the representation that it would be valuable to the respondent in a greater saving of coal than by the use of any other device. This representation of its particular usefulness to the respondent in his manufactory, connected with the fact that it was expressly made for this particular use by the petitioners, brings the case within that class of cases where it is held that a purchase shown to have been made for a particular purpose, communicated at the time to the vendor, implies a warranty that the goods furnished for such a purpose shall be reasonably fit for and shall answer the object for which they are purchased. Without resorting therefore to the doctrine that in the sale of a patent right, or of a patented article, there is an implied warranty of the validity of the patent, it is enough for the purposes of this case that there was in point of law a warranty that the respondent would have the right to use " Green's patent cut-off," in connection with the steam engine sold to him by the petitioners. *Williamson* v. *Allison*, 2 East, 446; *Jones* v. *Bright*, 5 Bing., 533; *Brown* v. *Edgington*, 2 Man. & Gr., 279; *Beals* v. *Olmstead*, 24 Verm., 114.

There was in this case something more than the sale of a patented article of which the patent was void. That would not deprive the purchaser of the use of it. But here was the sale of a patented article illegally manufactured by the petitioners, which they had no right to make or sell, though they represented that they had the right, and the use of which by the vendee was also illegal, and deprived him of any benefit arising from his purchase, and moreover subjected him to damages and costs if he used it. The petitioners are seeking to recover for the sale of an article where there is both a failure in the title to use it and illegality in the sale itself. We are of opinion, therefore, that to the extent of the value of the cut-off in question, there was a failure in the consideration of the notes described in the mortgage, and to that extent there should be a deduction from the amount found due to the peti

tioners. The right to make this deduction under such circumstances has not been denied by the petitioners. See *Avery* v. *Brown*, 31 Conn., 398. The finding of the court does not state in terms what is the precise value of this cut-off in connection with the engine in question. The language is, that the respondent suffered damage to the amount of eight hundred dollars by reason of his being deprived of the use of the cut-off. We are inclined to think that by this it was intended to find that the value of the engine without the cut-off was eight hundred dollars less than it would have been had the sale of the cut-off been legal, so that the respondent would have had the right to use it, as contemplated and intended at the time of the sale. If we are correct in this there was a failure in the consideration of the whole purchase to that extent. And on this ground we advise the superior court to deduct this sum from the amount of the notes and to pass a decree of foreclosure in favor of the petitioners for the balance.

In this opinion BUTLER and CARPENTER, Js., concurred; McCURDY and PARK, Js., dissented.