### DUTCHESS TOOL CO. v. KOLB.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. PATENTS—CONTRACT TO MAKE AND SELL PATENTED ARTICLE—MAKING ARTICLE NOT COVERED BY PATENT—ROYALTY.

Where a manufacturing company contracted with the owner of letters patent to pay a royalty to manufacture a patented article, which they never manufactured, but instead manufactured an article not covered by the letters patent, but used the name of the patentee on it, and later notified the owner of the letters patent that the patented article would no longer be made under a royalty, and continued to manufacture the article not patented and put it on the market under another name, the company is not liable for royalties.

2. SAME—LIABILITY FOR ROYALTIES.

To create a liability for royalties, the licensor must have not only an apparently valid patent, but the licensee must make and sell the article patented.

Appeal from special term, Dutchess county.

Action by the Dutchess Tool Company against Louis J. Kolb to recover a balance due on the books of plaintiff for goods sold and delivered to defendant. There was a judgment for defendant on a counterclaim, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William H. Wood, for appellant.
Horace Pettit, for respondent.

WOODWARD, J.   This action was brought to recover from the defendant the sum of $224, with interest; being a balance due upon the books of the plaintiff for goods sold and delivered to the defendant.   This bill is not disputed, but the defendant interposes a counterclaim, alleging that the plaintiff is indebted to him in a much larger sum for royalties upon a patented article, the right to which came to the defendant by assignment from the inventor.   The learned trial court found in favor of the defendant, and from the judgment entered appeal comes to this court; it being urged upon the part of the plaintiff that the contract under which the defendant claims was without consideration, the plaintiff not having made use of the device covered by the letters patent in the manufacture of the oven doors on which it is claimed the royalties are due.

While there are some facts involved which might justify a court of equity in refusing to grant relief to the plaintiff, this being an action at law, we are convinced that the learned trial court erred in its finding of fact that "the plaintiff was and is indebted to defendant for royalties agreed to be paid said defendant in the sum of four hundred and twenty-six dollars and sixty cents," and in the conclusion of law flowing therefrom.   The defendant is the owner of letters patent No. 379,941.   This patent covers a "new and improved baker's oven," invented by one Fritz Duhrkop, who claims, as a part of his invention—

"The combination of oven door, o, having pivot pin, p, which is extended at one end its bearing, and has a notched end, with balance weight, q, carried by such extended pivot, and with gas pipe, s, and cock, r, that is engaged by such notched end, substantially as specified."

In the detailed specifications accompanying the drawings, we find that:

"In Figs. 6 and 7, o is the door of the baking chamber, g, that turns inward on pivot pin, p, which is extended at one end beyond its bearing.   This extension carries a balance weight, q, and has a notched end, by which it grasps a gas cock, r, in a pipe, s, the burner of which is placed opposite a mica window in the baking chamber.   This burner is never entirely extinguished.   When the door is opened, the balance weight will maintain it at any desired inclination, and at the same time the flame from the burner will be turned up as long as the door is maintained by the weight in its open position.   When the door is closed the flame will be automatically turned down."

Obviously, the patent is not intended to cover the oven door, as such, but "the combination of oven door" with the apparatus for automatically lighting the oven when open.   There was evidence in the case that the same kind of door, or doors involving the same principle of opening and closing with a balance weight, were made in various localities, and that the attention of the inventor, with whom the original contract for license was made, was called to the fact as early as 1890, two years after the signing of the contract, and he was asked to protect the plaintiff against what it supposed to be an infringement.   At that time plaintiff's attorneys advised that the patent did not cover the door, independent of the devices used in com-

bination with it; but as the plaintiff was doing work for Duhrkop, and was enjoying a monopoly, to some extent, of the business of making this particular kind of door, nothing was done about it, and the plaintiff continued to pay the royalties.    In the early part of 1897, Duhrkop having in the meantime disposed of his rights and interest to the defendant, the latter discontinued the arrangement by which the plaintiff had been furnishing these doors to the defendant at a fixed price; and, after making an attempt to secure a renewal of the contract for manufacture at a reduced price, plaintiff dropped the matter, and notified the defendant that it would not manufacture any "more Duhrkop oven doors under a royalty as heretofore."    At no time during the period from 1888 to July, 1897, when the plaintiff was paying royalties under the contract, were any doors manufactured or sold having the appliances which are described in the letters patent, for the reason that the plaintiff had a device of its own for illuminat-. ing the interior of baking ovens, but these doors were put upon the market bearing words indicating that they were manufactured under the Duhrkop patent.    After serving notice upon the defendant that no more doors would be made under a royalty, plaintiff dropped the name of Duhrkop, and all words intended to convey notice of patent, and began manufacturing the same kind of doors as it had previously produced, putting them upon the market as the "Vienna Door."    The court below holds that the defendant is entitled to the royalties agreed upon in the original contract, but we are of the opinion that the plaintiff has only done since July, 1897, what it might have done at any time without the license of the inventor or his assignee, that the doors manufactured and sold by the plaintiff are not covered by the letters patent of the defendant, and that the contract is therefore without consideration, and of no binding force or effect.    The fact that the plaintiff has paid the royalties heretofore under a mistake, or because of real or imaginary benefits to itself, does not operate to prevent it from repudiating the contract and manufacturing these doors, if the defendant has no patent which covers them, and which secures to the plaintiff the rights which formed the supposed consideration of the contract.    As was said in the case of Saxton v. Dodge, 57 Barb. 84, 113:

"If the payees of the note had no such exclusive right, the defendants acquired nothing by the license. They merely obtained a license to do what they had the same right to do without any license.  The license conferred no right, for the licensors had none to confer. * * * The true rule, I think, is that, where a party gets nothing by the contract sought to be enforced against him,—neither title nor possession of property,—he is not estopped from setting up his defense."

See Hayne v. Maltby, 3 Term R. 438, 441.
In the case of Marston v. Swett, 82 N. Y. 526, 533, the court lay down the rule that:

"Where the patent is apparently valid and in force, the party using it, receiving the benefit of its supposed validity, is liable for royalties agreed to be paid, and cannot set up as a defense the actual invalidity of the patent.  The reasons for the rule are that the party has got what he bargained for; that he cannot be allowed at the same time to affirm and disaffirm the patent [or, as Lord Kenyon puts it, "blow hot and cold" with reference to the same

transaction]. While the manufacture goes on under such an apparently valid patent," continues the court, "it is presumed to be under and in accordance with the agreement to pay royalties. If the manufacturer does not so intend, and chooses to make the patented article, not under the patent, but in hostility to it, he must give notice of that intention, in order that the presumption may not attach or the patentee be misled. But if the patent is annulled or destroyed by due and effective legal proceedings and priority of invention, and a patent is awarded to another, no notice is necessary, for there is no presumption or inference of manufacture under a patent judicially avoided and annulled."

In the case at bar, while there is no reason to doubt the validity of the patent granted to Mr. Duhrkop, it is very certain that it does not cover the oven door manufactured and sold by the plaintiff under the name of the "Vienna Door," and the notice of the plaintiff that it would manufacture no more doors under the agreement was sufficient to relieve it of any liability to the defendant. The patent could be of no protection to the plaintiff; the goods which it has put upon the market are not sold under any pretense that they are protected by letters patent; they are not within the specifications contained in the patent; and the defendant, having given the plaintiff no valuable consideration, is not in a position to insist upon an enforcement of the contract under which the plaintiff was originally licensed. It is necessary, not only that the licensor should have an apparently valid patent, but that the licensee should make and sell the article patented, in order to create a liability for royalties. The patentee of a rowing machine has no authority to collect royalties upon a patented oarlock, nor has the owner of a patent upon an improved baker's oven a right to collect a royalty upon an oven door which is not made under the specifications of the patent. The patent, in so far as it relates to the door, is upon "the combination of oven door" with balance weight, and "with gas pipe, s, and cock, r," and not merely the oven door, such as is in common use in bakers' ovens. The judgment appealed from should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur; CULLEN, J., specially.

CULLEN, J. I concur, except that I think the only question is whether plaintiff made the patented articles or not. The validity of patents has nothing to do with the question of the plaintiff's liability.