knowledge (as we may infer in this case), and not from an assumed state of facts. Groff v. Rome Metallic Bedstead Co., 98 App. Div. 152–154, 90 N. Y. Supp. 691.

Order reversed, with $10 costs and disbursements, and motion granted, with $10 costs.

---

### PAMOS PICTURE CO. v. FRITZSCHE.

(Supreme Court, Special Term, New York County.  June 22, 1914.)

1. PATENTS ☞112—DENIAL OF LETTERS PATENT—EFFECT.

   Where the Patent Office has rejected an application for letters patent upon a device, there is a right in the general public to manufacture and sell such device, and no special injury can result to the attempted patentee from manufacture and sale by any individual.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165;  Dec. Dig. ☞112.]

2. INJUNCTION ☞22—OBJECTION TO PETITION FOR GRANTING OF LETTERS PATENT—APPLICATION ALREADY DENIED.

   Where applications for letters patent were rejected three months before the defendant threatened to file objections thereto, and where there was no evidence that a secret process was involved, there was no occasion for the issuance of an injunction to restrain the defendant from filing objection to the granting of the applications.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 19;  Dec. Dig. ☞22.]

Suit by the Pamos Picture Company against one Fritzsche.  On motion for injunction.  Denied.

A. W. Gray, of New York City, for plaintiff.

Franklin A. McKenzie. of New York City, for defendant.

GREENBAUM, J.  [1, 2]  The rejection of the application for letters patent by the United States Patent Office necessarily results in the right of the general public to manufacture and sell the devices described in the complaint.  Hence no special injury can result from the defendant's manufacture and sale of the articles mentioned.  With respect to the claim for an injunction to restrain the defendant from filing objection to the granting of the applications for letters patent, the proofs before me are that the application had been rejected in March, 1914, and the alleged threats of defendant to file objections occurred in May, 1914.  There is no evidence that a secret process is involved.

Upon the papers as submitted, the motion for injunction must be denied.

---

(90 Misc. Rep. 418)

### BUFFALO RUBBER MFG. CO. v. BATAVIA RUBBER CO..

(Supreme Court, Equity Term, Erie County.  May 26, 1915.)

1. PATENTS ☞218—CONTRACT FOR ROYALTIES—CONSIDERATION.

   Where plaintiff assigned to defendant its right to manufacture certain tires under an application for letters patent, then said to be pending, but which had been in fact denied, and the application dismissed, the

defendant's contract to pay royalties was unenforceable, as without consideration.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 330–338; Dec. Dig. ☞218.]

2. PATENTS ☞218—AGREEMENTS FOR ROYALTIES—RESCISSION—GROUNDS—FALSE REPRESENTATION.

Where plaintiff's president, in making a contract with defendant giving it the right to manufacture a certain tire upon payment of royalties, represented that an application for letters patent covering such tire was pending, while such application had in fact been declared abandoned by the Patent Office, the good faith of the president in making such representations did not preclude the defendant, upon discovering the facts, from having a rescission of the contract; such false statements, independent of any knowledge of their falsity, being sufficient ground in equity for the rescission of any contract induced thereby.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 330–338; Dec. Dig. ☞218.]

3. PATENTS ☞218—ROYALTY CONTRACT—INVALID PATENT IN FORCE—EFFECT.

Where a patent is standing and enforceable, one using it and receiving the benefits of its supposed validity remains liable for royalties agreed to be paid, the actual invalidity of the patent being no defense; but where it is annulled by effective legal proceedings, or priority of invention, no further royalties need be paid under the contract for the right to vend the patented articles.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 330–338; Dec. Dig. ☞218.]

4. PATENTS ☞218—VOID PATENT—ROYALTY CONTRACT—PAYMENTS—RECOVERY.

Where defendant paid royalties to plaintiff under a contract assigning plaintiff's rights in a tire for which it represented it had a valid application for letters patent pending, whereas in fact such application had been declared abandoned by the Patent Office, defendant's payments were recoverable by it, counterclaiming in plaintiff's action to recover further royalties.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 330–338; Dec. Dig. ☞218.]

5. PATENTS ☞218—VOID PATENT—ROYALTY CONTRACT—PAYMENTS—RECOVERY.

Where the agent of a licensee learned in February that the licensor's application for letters patent covering the device had been rejected, and the application declared abandoned, the payment of royalties up to the following August did not preclude the licensee from recovering them, in the absence of any element of estoppel in the case; the licensor being in no wise prejudiced, since the licensee had a reasonable time after the discovery of the facts to investigate and determine the rights and obligations of the parties.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 330–338; Dec. Dig. ☞218.]

6. TRADE-MARKS AND TRADE-NAMES ☞3—DESCRIPTIVE CHARACTER OF WORD—SECURITY TIRE—"TRADE-MARK."

Where the plaintiff manufactured a certain tire, marking it "Security Tire, Made by the Buffalo Rubber Company," and, after marketing only about 30, sold its right to make them under an application for letters patents to the defendant, which thereafter did so, marking the tire "Security Tires, Manufactured by Batavia Rubber Company," plaintiff's application to enjoin defendant from using such brand on tires after it refused to pay royalties on account of the invalidity of the patent rights which plaintiff had purported to assign was properly denied, since the

word "Security" was used simply as a name for the particular design of tire, not to indicate the maker or seller, while a "trade-mark" is a name, sign, symbol, or device attached to goods offered for sale in the market to distinguish them from similar goods, and to identify them with a particular owner of a business; its sole office being to indicate the origin of the goods, and plaintiff's act in having given defendant the right to use such word amounting to a waiver of its use as descriptive of the origin of the goods.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. ☜3.

For other definitions, see Words and Phrases, First and Second Series, Trade-Mark.]

7. TRADE-MARKS AND TRADE-NAMES ☜45—REGISTRATION OF TRADE-MARKS —EFFECT.

The registration of a word as a trade-mark by the United States Patent Office is not conclusive upon state courts as to the applicant's right to the registry or the validity of the trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. ☜45.]

Action by the Buffalo Rubber Manufacturing Company against the Batavia Rubber Company. Complaint dismissed, and judgment entered for defendant on its counterclaim.

Hoyt & Spratt, of Buffalo, for plaintiff.
Holmes, Rogers & Carpenter, of New York City, for defendant.

WHEELER, J. The plaintiff in this action first seeks to recover royalties agreed to be paid by the defendant on an alleged invention controlled by the plaintiff, for which an application for a patent, it was claimed, was pending in the United States Patent Office at Washington. For a second cause of action, the plaintiff seeks to enjoin the use of the word "Security" in connection with automobile tire treads, alleged to have been invented by the plaintiff's assignor.

On the 2d day of January, 1909, the plaintiff entered into a written contract with the defendant, whereby the plaintiff granted to the defendant the privilege and right to manufacture and sell, for a period of five years, "*a certain non-skid tread for vehicle tires, known as the 'Security Tread,' upon which the party of the first part* [i. e., the plaintiff] *has made application for a patent now pending.*" In consideration of the license, the defendant agreed to pay the plaintiff a certain royalty. The defendant, after paying these royalties for a time, refused longer to pay them; and this action, among other things, is brought to compel their payment.

The defense to this cause of action is that the plaintiff, through its president, falsely and fraudulently represented to the defendant, prior to the making of said contract, and for the purpose of inducing its execution, that he had a live and pending application in the Patent Office for a patent on said tread, and that a patent would undoubtedly be issued on such application, and that the defendant, relying on said representations, entered into the agreement in question.

As matter of fact, Toy was not the first inventor of the tread in question, but his invention had been anticipated by the invention of one

Charles Howard Cload, to whom English patents had been issued on his application, filed July 6, 1896. Toy's invention having been anticipated by that of Cload, his application for a patent was rejected on that ground by the United States Patent Office. This rejection was on March 8, 1907, and after an attempted amendment to his claim on March 28, 1908, the amendment was rejected, and the application declared abandoned by the United States Patent Office.

These facts must have been brought to the attention of and been known by Mr. Toy. Nevertheless, on January 2, 1909, the plaintiff, the assignee of Mr. Toy, made the contract in question, in which the application for a patent is referred to as then pending in the Patent Office, although it in fact had been rejected, and the application declared abandoned, for about a year prior to the making of the contract, wherein the plaintiff undertook to grant to the defendant the exclusive right to manufacture and sell the so-called "Security" non-skid tire.

[1] We thus perceive that the plaintiff not only had nothing to give the defendant, and there was no consideration for the agreement for the payment of royalties, but the contract was induced by false representations as to the status of the plaintiff's application before the United States Patent Office. We are of the opinion the evidence in this case fully sustains these conclusions.

[2] Mr. Toy contends he was not aware that his application had been finally rejected and declared abandoned. We think the evidence does not sustain that contention. Assuming, however, his claim in that respect to be true, and that the representations made were made in good faith, and in ignorance on the part of Toy of the final action of the Patent Office, nevertheless the statements and representations made were untrue and false. Such false statements and misrepresentations, independent of any knowledge of their falsity, are sufficient ground in equity for the rescission of any contract induced thereby. Bloomquist v. Farson, 88 Misc. Rep. 615, 151 N. Y. Supp. 356; Canadian Agency, Ltd., v. Assets R. Co., 165 App. Div. 96, 150 N. Y. Supp. 758; Squiers v. Thompson, 73 App. Div. 556, 76 N. Y. Supp. 734; Lyon v. James, 97 App. Div. 385, 90 N. Y. Supp. 28; Hammond v. Pennock, 61 N. Y. 152. This being so, the contract was not enforceable against the defendant—first, because supported by no consideration for the royalties to be paid; and, second, because induced by false and untrue statements as to the status of the subject-matter of the alleged invention of the tire tread.

[3] As to the want of consideration, it may be said that, where a patent is valid and in force, the party using it and receiving the benefit of its supposed validity remains liable for royalties agreed to be paid, and cannot urge as a defense the actual invalidity of the patent; but if the patent is annulled or destroyed by due and effective legal proceedings, or priority of invention, no further royalties need be paid under such a contract, as *"the manufacture is either absolutely free, or an infringement upon the rights of the prior inventors."* Marston v. Swett, 82 N. Y. 530. In Harlow v. Putnam, 124 Mass. 553, it was held that an exclusive license is without consideration if the patent is void, such

license conveying no right which the licensee did not already have. In Pacific Iron Works v. Newhall, 34 Conn. 67, it was held the price for a license to use an invention is not recoverable if the patent is void or the licensor had no title. See, also, Saxton v. Dodge, 57 Barb. 84; Pamos Picture Co. v. Fritzsche, 153 N. Y. Supp. 779; Dutchess Tool Co. v. Kolb, 44 App. Div. 625, 60 N. Y. Supp. 94.

[4] Growing out of these transactions, the defendant asserts a counterclaim for the sum of $758.74, paid by the defendant for royalties under the contract in question. It would seem to follow as a matter of course, if these payments were induced by misrepresentation, that the right to have these moneys refunded is plain.

[5] The plaintiff, however, contends that, assuming the representations were in fact untrue, nevertheless the defendant did pay a portion of these royalties after it knew the application for a patent had been rejected. Some time in February, 1912, the attorney for the defendant learned the fact that the plaintiff's application had been rejected and the application declared abandoned. Royalties, however, were paid up to August 1, 1912. The defendant had a reasonable time after the discovery of the facts to investigate and determine their rights and obligations under the circumstances. Pence v. Langdon, 99 U. S. 581, 25 L. Ed. 420.

It may be argued that it did not act as expeditiously as it might. Nevertheless we cannot discover that the plaintiff was in any way prejudiced. It lost nothing by the delay, and there appears to be no element of estoppel in the case. The plaintiff was no worse off because of the payment of the royalties from February to August. It owned nothing, and had nothing to give. The defendant was enjoying no rights or property controlled by the plaintiff. In all cases where contracts are sustained for failure to promptly repudiate them, there appears to be some element of estoppel by placing a party in a worse position by reason of the delay to act. There is nothing of such a nature in the case before us, and we think the defendant is entitled, not only to repudiate the contract, but recover on the counterclaim.

[6] In addition to the claim for an accounting for the royalties claimed to be due under the contract in question, the plaintiff also seeks in this action to restrain the use by the defendant of the word "Security," in connection with the non-skid tire claimed to have been invented by the plaintiff's president, Toy. The contract in question referred to and described the tire as the "Security" tread. The plaintiff claims the exclusive right to use this word as a trade-mark, not by virtue of any registration of the same as a trade-mark, but by virtue of some common-law ownership.

The evidence shows that prior to the making of the contract with the defendant the plaintiff had used the word "Anchor" as a name for the device. The use of the word "Anchor" was discontinued, and the word "Security" substituted. The use of the word "Security," as applied to or descriptive of the tire in question, was very limited. The evidence tends to show that up to the time of the making of the contract with the defendant the word "Security" had been put on only 30 tires of the kind made for the plaintiff, and sold by it to one con-

cern.  After the making of the contract, the plaintiff manufactured no other tires of the character, and all the tires of this device made and sold were made and sold by the defendant.  On the side of these tires were cast in raised letters these words: "Security Tires, Manufactured by the Batavia Rubber Company."

It seems that the plaintiff applied to the authorities at Washington for the registration of the word "Security" as applied to tires as a trade-mark.  Its application was denied on the ground the word was simply descriptive.  Later the defendant applied for registration of the same word, and its application was granted, and it claims that it is entitled to all the benefits as the true and real owner of the word "Security" as a trade-mark applied to the peculiar device of tire in question.

The question presented is whether the word "Security," used in connection with the tire in question, is the subject of protection as a legitimate trade-mark.  The evidence shows that the plaintiff did use it on a small number of tires of the peculiar design described in the contract between the parties before the making of the contract, and that after the contract was made the defendant manufactured and sold tires of that design with the word "Security" in raised letters on the rim of the tire.  It was used to designate and describe this particular form or design of automobile tires.  It did not, in or of itself, convey to the purchaser any information as to the maker or seller of the tire, nor was it used or employed to describe any particular or special quality of workmanship.  It was employed purely and simply to designate the peculiar and particular design for which letters patent from the United States government were applied for by the plaintiff's assignor.

On the tires made and sold by the defendant, in immediate connection with the word "Security" were added the words "Manufactured by the Batavia Rubber Company," and on the tires made and sold by the plaintiff prior to its contract with the defendant were added the words "Made by the Buffalo Rubber Works."  These facts show that the word "Security," in the minds of both parties, was used simply as a name for the particular design of tire, and not to indicate the maker or seller.  As matter of fact, this design of tire had been previously invented by a man by the name of Cload, who was a British subject, and letters patent for his invention had been issued to him by his government.  The plaintiff's assignor, Toy, not being the first and original inventor, the result was that the United States Patent Office rejected his application for a patent, and the invention was open to free and unrestricted use of the device by the public.

In view of these facts, did the plaintiff acquire a proprietary and exclusive right at common law to the use of the word "Security" in connection with tires of the description in question, and can it insist that no other maker or seller shall use the word in connection therewith?  In other words, can it be treated and regarded as its "trademark"?  A trade-mark has been defined as:

"A name, sign, symbol, or device which is attached to goods offered for sale in the market, so as to distinguish them from similar goods, and to identify them with a particular maker, or his successors, as owners of a particular business, as being made, worked upon, imported, selected, certified, or sold

by him or them.  It has been aptly described as the commercial substitute of one's own autographic signature, certifying to the genuineness of the goods to which it is affixed."  38 Cyc. 678.

It is further said:

"The sole office or function of a trade-mark is to indicate the origin or ownership of the goods to which it is affixed, and thus to distinguish the goods of one person from those of another."  38 Cyc. 679; Ball v. Broadway Bazar Co., 194 N. Y. 429, 87 N. E. 674; Barrett Chemical Co. v. Stern, 176 N. Y. 27, 68 N. E. 65; Waterman v. Shipman, 130 N. Y. 301, 311, 29 N. E. 111.

Can it be fairly said that the word "Security," used upon the tire in question, in any way indicated or indicates its origin or ownership, or distinguishes it from the tires of other manufacturers?  It seems to the writer to be descriptive of the type or design, rather than as indicating the manufacturer or person putting such tires on the market. The word was evidently so used in the contract between the parties, and in practice.  The plaintiff first called it the "Anchor" tire, and, abandoning the word "Anchor," next described it as the "Security" tire.  The plaintiff then assumed to license the defendant to manufacture and sell the tire, and permitted the defendant to brand these tires as "Security" tires made by "the Batavia Rubber Company."  It became and was necessary to add the name of the Batavia Rubber Company in order to convey to the public any idea of the manufacturer and seller.  If the plaintiff had intended the word "Security" as anything else than as a word descriptive of the *design,* as distinguished from the maker, it certainly would not have permitted the defendant to have used it in connection with the tire made by it.

The plaintiff, when it permitted or gave to the defendant the privilege to use the word in connection with tires made by it virtually abandoned the right to claim that the word "Security" in any sense indicated tires manufactured by the plaintiff.  It waived and abandoned the use of the word as indicative of origin or ownership, and its use became and was simply descriptive of the type or design, which, as we have seen, any one had the right to use or manufacture.  While the evidence shows that the plaintiff did use the word "Security" on some of these tires before making the contract with the defendant, nevertheless such use was very limited.  It was not used upon to exceed 30 tires in all.

The word employed is not only descriptive of design, but indicative of its non-skidding character or quality.  It is a fundamental rule that terms descriptive of the goods to which they are applied cannot be appropriated exclusively as trade-marks or trade-names.  In Barrett Chemical Co. v. Stern, 176 N. Y. 30, 68 N. E. 65, the court said:

"Where a common word is adopted or placed on a commercial article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained .as a trade-mark."

To the same effect is the case of Cooke & Cobb Co. v. Miller, 169 N. Y. 475, 62 N. E. 582.  See, also, Koehler v. Sanders, 122 N. Y. 65, 25 N. E. 235, 9 L. R. A. 576.  In the case last cited, Judge Bradley, speaking for the court said:

153 N.Y.S.—50

"In referring to the principles relating to trade-marks, and upon which their efficiency as such depends, it may be observed that there is no exclusive right to represent by them an idea, nor can there be an exclusive appropriation of that which is descriptive of the articles to which they are attached, or that which indicates their ingredients, mode of composition, characteristic properties, quality, or nature"—citing Enoch Morgan's Sons Co. v. Troxell, 89 N. Y. 292, 42 Am. Rep. 294; Amoskeag Mfg. Co. v. Spear, 2 Sandf. 599; Caswell v. Davis, 58 N. Y. 223, 17 Am. Rep. 233.

[7] We are of the opinion that these principles applied to the case in hand lead to the result that neither party has any exclusive right to the use of the word "Security" as a trade-mark. It appears that the defendant has secured the registration of the word by the United States Patent Office as a trade-mark for its own use, and is naturally anxious to retain the benefit conferred by such registration. Its registration, however, is not conclusive upon the courts as to its validity or right to the registry. It appears that the plaintiff applied to the government for the registration of the word as a trade-mark, and its application was rejected upon substantially the same grounds and for the same reasons above stated by us. Upon an application by the defendant, however, the department appears to have reversed its ruling made on the application of the plaintiff. We think its first action was correct, and in conformity with the rules of law which govern the subject. We therefore hold that the plaintiff has no exclusive right to the use of the word "Security" applied to the particular design of tire in question.

There is no question of unfair competition involved in this case. The evidence is that this word, when used by the defendant on the tires manufactured by it, is used in connection with the further words, "Made by the Batavia Rubber Company," so that the public is advised of the origin of the particular article offered for sale. We therefore are of the opinion the plaintiff is not entitled to the injunction asked.

As a conclusion of the whole matter, we hold the plaintiff's complaint should be dismissed, and that the defendant is entitled to judgment on its counterclaim to recover back the sum of $758.74, paid by it for royalties under the contract.

So ordered.