JOHN MERRY, Appellant, v. LOUIS HOOPES et al., Executors, etc., Respondents.

Where, upon the dissolution of a firm, one of the copartners purchases and succeeds to the business, the exclusive right to use trade-marks belonging to the firm passes to the purchaser, although no express mention is made of them in the deed of assignment.

*Huwer* v. *Dannenhoffer* (82 N. Y. 499) and *Hazard* v. *Caswell* (93 id. 259) distinguished.

(Argued October 22, 1888;  decided November 27, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 2, 1886, which affirmed a judgment in favor of Evan T. Hoopes, the original defendant, the present defendants' testator, entered upon the report of a decision of the court on trial at Special Term.

This action was brought to restrain the use by the original defendant of certain brands claimed by plaintiff to be trade-marks, to which he claimed an exclusive right.

The original partners were formerly partners engaged in the business of manufacturing galvanized iron. The brands in question were used by them; one consisted of the figure of a lion couchant with the words, " Lion Brand; " the other the figure of a phœnix with the words, " Phœnix Brand." At the time of the dissolution of the firm the parties executed an instrument, of which the following is a copy:

" Agreement, made this first day of February, 1884, between Evan T. Hoopes, of the city of New York, and John Merry, of the same place, witnesseth:

" That the copartnership heretofore existing between said Hoopes and Merry is hereby dissolved upon the following terms:

" *First.* Said Hoopes shall, upon the execution of this agreement, receive of the partnership funds and property the sum of forty-five hundred dollars in cash, also notes of customers of Hoopes & Merry, now held by said firm, indorsed by Hoopes & Merry, to the amount of seventy-five hundred dollars, and all interest on said notes is to be allowed to said Hoopes; also said Hoopes is to receive notes by said Merry to the order of said Hoopes to the amount of five thousand dollars, to wit, three notes, payable in six, nine and twelve months, respectively, from this date, with interest; also said Hoopes is to receive and said Merry is to deliver to him merchandise of the value of five thousand dollars, to be delivered as selected by said Hoopes, and at prices agreed upon as per memorandum signed by said Merry this day, and delivered simultaneously herewith; all of said merchandise to be delivered on or before May 15, 1884.

" *Second.* Said Hoopes & Merry are to assign the existing lease of the premises north side of Fifteenth street, between Tenth and Eleventh avenues, heretofore occupied by said firm, to Evan T. Hoopes, and thereupon said Hoopes is to execute a lease of said premises to said Merry for the period of twenty-seven months from the first day of February, 1884, at the monthly rent of six hundred and fifty dollars, payable monthly; which said Merry agrees to pay; and said Hoopes

is to execute also a lease to said Merry, for the same period aforesaid, of the plant belonging to the business of said firm, as specified in memorandum annexed, including office fixtures, horses and wagons, for the sum of one dollar, with a proviso, that on default of compliance by said Merry with the terms of the lease of said premises, the lease of the plant shall terminate, and said Hoopes may thereupon take possession of all said plant, said Merry to deliver the same to him undiminished.

" *Third.* Upon expiration of said term, said leases having been complied with, and all indebtedness of said Merry to said Hoopes, arising from the foregoing provisions of this agreement having been paid, said Hoopes shall execute and deliver to said Merry a bill of sale, conveying to said Merry all said plant for the sum of one thousand dollars, which said Merry shall pay therefor.

" *Fourth.* Said Merry is to succeed to and assume all the liabilities of the firm of Hoopes & Merry.

" *Fifth.* Said Merry agrees to pay said Hoopes the sum of six hundred and fifty dollars monthly, on the last secular day of each month, for the period of twenty-seven months, from the 1st day of February, 1884, and said payments shall be credited, when made, on the rent reserved in said lease of said premises ; but if said lease shall be hereafter annulled, it shall not affect the covenant herein for payment of said monthly sums, but said covenant shall remain binding, notwithstanding said lease may be annulled, it being a part of the consideration of this agreement that said Merry shall pay to said Hoopes the sum of seventeen thousand five hundred and fifty dollars in installments of six hundred and fifty dollars monthly.

" *Sixth.* If said Hoopes should neglect to pay to his landlord the rent of said premises within five days after the same is due, said Merry may pay any such rent so neglected to be paid by said Hoopes, and charge the same to Hoopes' account.

" *Seventh.* If the premises shall be destroyed by fire, so that, by the terms of said lease the rent ceases, then said Merry shall be entitled to deduct from the said monthly payments, herein-

before provided, thereafter becoming due, the sum of one hundred and eighty-three $\frac{83}{100}$ dollars, and said Merry shall be entitled to a like reduction in case, for any reason, rent should cease to be payable under the lease heretofore existing, made by Bradish Johnson to Hoopes & Merry, on said premises, this day assigned to Hoopes.

"Witness our hands and seals the day and year first above written.

"EVAN T. HOOPES.    [SEAL.]

"JOHN MERRY.    [SEAL.]"

Another paper was signed by the parties headed " Plant Account." Among the articles enumerated therein were " stencil plates." These were the plates with which the brands in question were painted on the goods manufactured.

The stipulations as to the assignment of the firm lease and the execution of a new lease to plaintiff were carried out, and he continued the business. Hoopes soon after commenced and carried on the same business, using similar brands.

The further material facts are stated in the opinion.

*Alexander N. Campbell* for appellant. The marks or brands in question are trade-marks, and were the exclusive property of John Merry & Co., the moment that firm put them upon merchandise of its own manufacture. (*Amoskeag Man. Co.* v. *Spear*, 2 Sandf. 615; Browne's Trade-Marks, § 54; Upton's Trade-Marks, 9, 46; *Man. Co.* v. *Trainer*, 101 U. S. 53, § 3; *Congress & Empire Spring Co.* v. *High Rock Congress Spring Co.*, 57 Barb. 538.) The marks passed to the assignee, Payne, by the general assignment. (Burrill on Assignments, 149, § 100; Mass. Gen. Stat., chap. 118 § 44; *Kidd* v. *Johnson*, 100 U. S. 620; 1 N. Y. Monthly Law Bulletin, 47; Browne's Trade-Marks, 354, 355; *Brennan* v. *Wilson*, 11 N. Y. 502.) Hoopes obtained as good title to the trade-mark as to any asset conveyed to him by the assignee. (Upton's Trade-Marks, 81; *Pine* v. *Rikert*, 21 Barb. 469.) At dissolution of the firm of Hoopes & Merry, John Merry acquired absolute and exclusive ownership in the

trade-marks. (*Kellogg* v. *Totten,* 19 Abb. Pr. 40; Browne on Trade Marks, 61; *Shipwright* v. *Clements,* 19 W. R. 599.) Hoopes, by using the trade-marks, after the dissolution, wronged both the plaintiff and the public. (*Perry* v. *Truefitt,* 6 Beav. 66; *Boardman* v. *Meridan Britannia Co.,* 35 Conn. 402; *Newman* v. *Alvord,* 51 N. Y. 189; *Sedon* v. *Senate,* 1811 Rolls Court; Eden on Injunctions [1st Am. ed.], 226; *Braham* v. *Bustard,* 9 Law Times [N. S.] 199; *Coates* v. *Holbrook,* 2 Sandf. Ch. 586; *Cook* v. *Starkweather,* 13 Abb. [N. S.] 392; *G. & H. Mfg. Co.* v. *Hall,* 61 N. Y. 226; *Petersen* v. *Humphrey,* 4 Abb. Pr. 396; *Lee* v. *Haley,* 18 Week. Rep. 342.)

*Jefferson Clark* for respondents. If the marks in question are trade-marks, they were transferred by the general assignment made by John Merry & Co. to Cornelius B. Payne. (*Hegeman* v. *Hegeman,* 8 Daly, 1; *In re Sweezy,* 62 How. Pr. 215; 64 id. 353; *In re Knox,* 1 Mon. Law Bul. 47; *Bury* v. *Bedford,* 4 De G., J. & S. 352; *Hudson* v. *Osborne,* 21 L. T. [N. S.] 386; *Edleston* v. *Vick,* 23 Eng. L. and E. 51.) Failure to give bond or file schedules did not invalidate the assignment. (*Brennan* v. *Wilson,* 71 N. Y. 502.) The transfer by Payne to Hoopes was valid, at least as to plaintiff, notwithstanding the failure of the assignee to qualify, for it was a *bona fide* sale for value in which the plaintiff acquiesced, and which he, by his subsequent acts, affirmed. (*Pine* v. *Rikert,* 21 Barb. 469; *Sheldon* v. *Stryker,* 42 id. 284.) Hoopes thus became the owner of the marks, if they were trade-marks, and Merry reacquired an interest in them only by the formation of the firm of Hoopes & Merry. (*Huwer* v. *Dannenhoffer,* 82 N. Y. 499; *Hazard* v. *Caswell,* 93 id. 259.) The marks in question do not constitute trade-marks. Plaintiff simply adopts a different mode of designating the qualities by the figures of the lion and phoenix. The marks only indicate kinds and qualities of iron, and no property in such marks or devices can be acquired. (*Stokes* v. *Landgraff,* 17 Barb. 608; *Royal Baking Powder Co.* v. *Sherrill,* 93 N. Y. 331.)

PECKHAM, J. If the brands in question were trade-marks, so that they indicated that the iron upon which they were placed was of the manufacture of the plaintiff, or of the firm of which he had been a member, or that it had been galvanized by him or his firm, or specially sold by him or them, we think the right to exclusively use them on iron galvanized by the plaintiff, passed to him by virtue of the written papers signed by the parties at the time of the dissolution.

They were brands which had been designed by the plaintiff while a member of the firm of John Merry & Co., and had been used by that firm, and we think had passed to the firm composed of the plaintiff and the defendants' testator. Although the words "good will" were not mentioned in the papers (other than in Exhibit F., which was not signed by the parties, and which the defendant does not recollect even to have seen), yet it is evident, from an inspection of the papers which were signed by him, that it was meant to pass, and when defendant denies it he merely denies a conclusion of law, as the intention to pass it is derived from the documents signed by the parties. In *Shipwright* v. *Clements* (19 W. R. 599), MALINS, V. C., held, that where a business was sold the entire good will and right to use trade-marks pass to the pur chaser, without any express mention of them being made in the deed of assignment. (See, also, *Hudson* v. *Osborne*, 18 W. R., Ch. Dig. 44, paragraph 15 ; *S. C.*, 39 L. J. R. [N. S.] 79.) The effect of the transaction between the parties, as evidenced in the papers executed by them, was a sale of the business, its good will and its trade-marks to the plaintiff by the defendants' testator. All the liabilities of the late firm were assumed by the plaintiff, and he was to succeed it in the same business and at the same place, and for this purpose the defendants' testator assigned the lease of the premises to plaintiff, and, in substance, sold the plant to him, and among the articles of property contained in the inventory of such plant were stencil plates which made the brands. The agreement of dissolution specified exactly what the defend-

ant was to have from the firm, and the good will was not there included, nor any marks or brands, nor was defendant to succeed to the business, or any part thereof, and what the defendant did not take it was meant the plaintiff should have. After the dissolution it was found as a fact by the court, that both parties engaged in the business of dealing in galvanized iron in New York, and both parties used these brands, the plaintiff upon iron galvanized by him, and the defendant upon iron galvanized for him by other parties, pursuant to his order.

The court found as a conclusion of law that the plaintiff never acquired and never had the exclusive right to use these marks, and that the defendant had the same right which plaintiff had to their use.

There is no express finding that these brands were trade-marks, and the evidence on the subject is contradictory.

The plaintiff testifies to a state of facts which would leave no doubt that they indicated that the iron upon which they were found was not alone of a certain quality, but that it had been galvanized by the plaintiff, or by a firm of which he was a member, and that such iron thus galvanized had a large sale through the country. and the brands were valuable as a trade-mark.

But the defendant, on the contrary, testified in so many words that the brands indicated nothing of the sort; that they simply indicated that the iron itself upon which they were found was iron of the first or second quality (according to the brand which was used), and did not in any way indicate or represent that the plaintiff or any other special person or firm had manufactured or galvanized it, or that the galvanizing was of any particular quality; that if the words, "best bloom iron" had been used in the one case, and "good second quality charcoal iron" had been used in the other, all the information would have been imparted to those in the trade that they would have acquired from seeing these brands upon the iron; that it was simply a short way to describe the original quality of the iron which had been subjected to the galvanizing process,

and the iron itself was not manufactured by plaintiff, nor had he any connection with its manufacture.

If the brands had only this meaning and significance, it is plain that the plaintiff would have no right to prevent the defendants from using them, for the exclusive right to use them would not pass as part of the good will or as a trade-mark; while, if the plaintiff's contention were true, it is equally plain, upon our construction of the dissolution articles, that he would have such right.  The court, upon this, and several other questions, was requested to find in accordance with the plaintiff's contention, and refused to do so, " except so far as they (the requests) are covered by the findings signed on application of defendants."

There is no express and separate finding on this subject signed by the court on application of defendants, or at all. But upon the fact (with others) found by the court that " no mention was made of any trade-mark in any of the papers executed by said parties upon the dissolution of said firm, and that neither partner expressly conveyed to the other any right to the use of any marks or brands," the court found as a conclusion of law that the plaintiff never acquired and never had the exclusive right to the use of the marks or brands aforesaid, and that the defendants had the same right which plaintiff had to use such brands or marks.

The result of the finding of the court and its conclusion of law is that, assuming these marks to be a trade-mark, there is no evidence of an exclusive right to its use by plaintiff, and for that reason the complaint was dismissed.   Although it did refuse to find the facts as to the trade-mark when specially asked so to do by the plaintiff, other than as was contained in the findings for defendants, yet the finding of fact which it did make for defendants and the conclusion of law therefrom, render it clear that the court assumed the fact as existing (and in the above seventh finding so treated it), that the brands were trade-marks, although still deciding that the right to their exclusive use did not rest with the plaintiff.

In this we think there was error, and the exception to the con-

clusion of law reaches it.   Upon a new trial it can be plainly dis
cussed and the facts found one way or the other upon which the
question depends whether these brands were trade-marks or
were mere labels indicative of the quality of iron upon which the
galvanizing process had been performed.

The cases of *Huwer* v. *Dannenhoffer* (82 N. Y. 499), and
*Hazard* v. *Caswell* (93 id. 259), are not in conflict with the
decision of this case.   They simply hold that a trade-mark used
by a firm is an asset of the firm, and upon a dissolution each
partner has the right to use it unless he has vested the other
with an exclusive right to do so, and that it is incumbent upon
the partner who claims such exclusive right to prove himself
vested with it.

In this case we hold that if these were trade-marks then the
plaintiff has proved such exclusive right, so far as the facts are
now presented.

The judgment should be reversed and a new trial ordered,
with costs to abide the event.

All concur.

Judgment reversed.