of the statute of limitations was not suspended during such absences. The preponderance of the evidence is with the plaintiff as to the execution and delivery of the note.

Plaintiff is entitled to judgment for the amount due on the note, and for such part of the account for services rendered and board furnished within six years prior to September 21, 1894, when said account was allowed by said administrator.

T. L. Magruder, for Plaintiff.

Little & Spencer, for Defendant.

------

(Superior Court of Cincinnati.)
General Term—May 1897.

EMMA A. BURKHARDT ANDREAS
AND CORNELIUS BURKHARDT,
PARTNERS DOING BUSINESS
AS BURKHARDT BROTHERS
& CO. v. THE A. E. BURK-
HARDT FUR AND HAT
CO.

------

1. Where a business is sold including the good will, as a general rule, the trade-marks of the business pass to the purchaser.

2. The firm of A. E. Burkhardt Co., being engaged in the business of selling hats and caps, sold its business, including its good will and the right to a trade-mark having upon it the name "Burkhardt", to a corporation called "The A. E. Burkhardt Company." Subsequently the assets and business of the corporation were placed in the hands of a receiver, and the court ordered the receiver to sell all the assets and business as a going concern together with the good will.

*Held*—that the trade-mark of the business, including the right to use the name "Burkhardt" as a part of the trade-mark, passed to the purchaser at the judicial sale.

------

SMITH, J.

This case has been reserved to general term upon a bill of evidence, and raises the question whether plaintiffs are entitled to the use of a certain trade-mark in carrying on the hat and cap business in which they are now engaged.

The material facts in the case are as follows: For several years prior to the 12th day of March, 1892, A. E. Burkhardt carried on the hat and fur business in this city under the name of A. E. Burkhardt and Company. He was not a manufacturer, but purchased his hats from different firms in New York and other Eastern places. While engaged in said business, he owned and used a trade-mark upon his hats, caps and furs for the purpose of designating and distinguishing such articles as having come from his establishment.

The trade-mark consisted of the figure of a lion resting upon a platform with the word "Burkhardt" in large letters upon the side of the platform, the words "Arbiter of Fashions" above the figure of the lion, and beneath the platform the words "Trademark— Cincinnati. Copyrighted."

On or about March 3, 1892, A. E. Burkhardt, together with certain other persons incorporated under the laws of Ohio the A. E. Burkhardt Company; and thereafter, on or about the 12th day of March, 1892, by an agreement in writing, entered upon the minutes of said corporation and signed and subscribed by said A. E. Burkhardt, and duly authorized by and executed on behalf of said corporation, its stockholders and directors, said A. E. Burkhardt sold to the said A. E. Burkhardt Company for the sum of three hundred and ninety-nine thousand dollars ($399,000.00) the business of said A. E. Burkhardt & Co. The property conveyed was more particularly described as:

"The assets of the business heretofore carried on by said Burkhardt under the name of A. E. Burkhardt & Co. as per schedule thereof submitted to the meeting by Mr. Krais on behalf of Mr. Burkhardt, including stock, furniture and fixtures, cash, accounts receivable, good will, etc., said schedule being the inventory of said business taken March 1st, 1892."

In consideration of the transfer of said property A. E. Burkhardt received 3,990 shares of stock subscribed for by him as paid up in full, he at once became a member of the corporation and its president, and remained in such official position and in the active management of the business until December 9th, 1895, when the corporation went into the hands of Louis Kramer as receiver.

The corporation, in opening its books of account for the beginning of its business as the successor of A. E. Burkhardt & Co., entered upon the second page of the journal among other entries relating to and describing the property acquired by said corporation from A. E. Burkhardt the following: "Sundries to good will and use of name, being value transferred in payment of subscription of A. E. Burkhardt $100,000.00"; and said entry was then posted into the ledger of the company corresponding with the journal, on page 5 thereof, in the account entitled, "Good-will, etc., as follow "To J. 2 $100,000.00."

During the periods that the corporation and the receiver carried on the business of the corporation, the said trade-mark was used and affixed to the hats and caps manufactured for and sold by the A. E. Burkhardt Company in the same manner as during the continuance of the business carried on by A. E. Burkhardt as A. E. Burkhardt & Company.

The said hat and cap business together with the business of selling at retail men's furnishing goods, which was one part or branch of the entire business of the A. E. Burkhardt Company as it had been part or branch of the business of A. E. Burkhardt, was located in the store 76 West Fourth Street in the city of Cincinnati; while another branch of the business de-

voted in the main although not entirely to the sale of furs, was located on Race Street in said city.

On or about the 9th day of December, 1895 the common pleas court in a proceeding begun against the A. E. Burkhardt Company appointed Louis Kramer receiver of the same, and on the 8th day of July, 1896, it was ordered by the court that the receiver should sell at public auction:

"All the property and assets of the A. E. Burkhardt Co. contained in said store No. 76 West Fourth Street, Cincinnati, Ohio, and belonging and appertaining thereto, and consisting of all the merchandise, comprising hats, caps and furnishing goods. Also all the fixtures, counters, show cases, furniture, tools and implements, together with all other property contained in said store or appertaining to said business in the possession of said receiver and belonging to the said A. E. Burkhardt Co. including also a delivery wagon, and including also the lease of said premises held by the A. E. Burkhardt Co., and inluding also the good will of said business, but excepting,, however, the book accounts belonging to said business; all of said property shall be sold in bulk as an entirety, and shall be offered for sale, as a going concern, at public auction, for cash, on Saturday, July 18, 1896, at 10 o'clock A. M.; and all of said property shall be sold without reserve or limit to the highest bidder."

Thereupon, in pursuance of said order, the receiver, after proper advertisement, on the 18th of July, 1896,, sold to Emma A. Burkhardt, one of the plaintiffs above named, for the sum of Seventy-five Hundred Dollars ($7500.00) cash all and singular as an entirety, the property described in said notice and advertisement of sale, including all the merchandise and fixtures in said store, together with the lease of said premises and good will of the business of said hat store as a going concern.

Subsequently Emma A. Burkhardt, together with her two sons, Andreas and Cornelius, formed a partnership under the firm name of Burkhardt Bros. & Co. for the purpose of carrying on the hat and cap business, and the said Emma A. Burkhardt transferred to said firm all the interest purchsed by her from Louis Kramer, receiver.

In carrying on this business, said firm affixed the trade-mark consisting of the design and figure heretofore described with the name "Burkhardt" thereon, to the hats and caps sold by it.

The defendant A. E. Burkhardt has on the next square also entered into the business of selling hats and caps, with a corporation known as The A. E. Burkhardt Fur and Hat Co., and using as a trademark for his goods one which resembles so closely the one used by the old corporation and now used by plaintiffs, that for all practical purposes it may be said to be the same trademark.

The plaintiffs contend that the right to use this trade-marke passed to Emma A. Burkardt by her purchase from Louis Kramer, receiver, and subsequently to plaintiffs by a transfer to them of the same by said Emma A. Burkhardt; and therefore seek to enjoin the defendant from the use of said trade-mark.

The defendant contends:

First,—That A. E. Burkhardt is individually the owner of this trade-mark, for the reason that it was created and established by him while engaged in business for himself as A. E. Burkhardt & Co.; that he never parted with the same: and that the defendant corporation of which he is a member is entitled to use the same with his consent.

Second,— That even if he did transfer the trade-mark to the corporation known as the A. E. Burkhardt Company, nevertheless it belongs to said corporation and did not pass to Emma A. Burkhardt at the receiver's sale, and subsequently to Burkhardt Bros. Co., and that the latter firm therefore have no right to use the same, and no right therefore to ask a court of equity to grant an injunction to protect them in its use.

Is A. E. Burkhardt still the owner of said trade-mark?

The evidence in this case is undisputed that in transferring his interest to The A. E. Burkhardt Company, A. E. Burkhardt transferred to them all of the assets of A. E. Burkhardt and Company including the good-will. There is not the slightest evidence to raise a doubt that he intended to withhold from the operation of said transfer any property or right of property which the firm of A. E. Burkhardt & Co. owned. And that the intention of the parties was also to include this trade-mark in the transfer receives additional confirmation from the fact that it was used during all of the time the corporation was engaged in business during which time A. E. Burkhardt was a director and the president of the corporation and from the further fact that the books of the corporation recite that the $100,000.00 paid for the good will also included the use of the name.

But in the absence of any confirmatory evidence just suggested as to the intention of the parties that the trade-mark should pass by the transfer, the law is well settled that.

"The sale of a business is a sale of the good-will; but it is not necessary that the term 'good-will' be specifically mentioned. In such sale, the title to trade-marks passes, whether they be specifically mentioned or not."

Brown on Trademarks, 2nd Ed., sec. 57, page 61: "and that included in and making up the good-will and passing with it upon a sale of the business is the business name or trademark or trade-names of the business." Vol. 10 Harvard Law Review, Jany. 1897, P. 230.

In support of the proposition that the trademarks of a business pass with the good-will we refer also to the following authorities:

Shipwright v. Clemens, 19 Weekly Rep. 599; Hudson v. Osborne, 39 L. J. R. (U. S.) 79; Menendez v. Holt, 128 U. S. 522; Atlantic v. Robinson, 20 Fed. Rep. 217, 218, 219; Mugan v. Rogers, 26 Patent Off. Gaz. 1113; Walton v. Crowley, 3 Blatch (Cir. Ct.) 410; Mence vs. Hoopes, 111 N. Y. 415; Am. & Eng. Enc. of Law 394; Cox Manual of Trademark cases, 2nd Ed., p. 300, 366 & 199.

The remaining question is, did the trademark by the judicial sale by Louis Kramer, receiver, pass from the corporation to Emma A. Burkhardt?

If the sale had been a private sale, and the name "Burkhardt" were not upon the trade-mark, in view of the sweeping language of the order there could be no question that the trade-mark with the name on it did pass at the judicial sale. For the order to the receiver was to sell "as an entirety" and "as a going concern" "all the property and assets, contained in said store, and consisting of all the merchandise, also all the fixtures together, with all other property in said store or appertaining to said business in the possession of said receiver, and including also the lease, and including also the good will of said business."

As a bill of sale containing this language would unquestionably carry the trade-marks of a concern, why should the fact that the sale is made under an order of the court require that the language should be given a different interpretation? In determining this question so far as a partnership is concerned when it is dissolved and its assets sold at judicial sale, the supreme court in the case of the Snyder Mnfg. Co. v. Snyder 54 Ohio St. said:

"Where the partners themselves make a sale of the firm effects including the good will, the intention and understanding is manifest that the purchaser shall acquire and enjoy every advantage and benefit which the firm had, so far as the parties are capable of transferring the same, and when a sale is made under an order of court in a proceeding to which the partners are parties, the intention is not less plainly inferable."

We see no reason why the same principle is not applicable to a sale of the assets and good-will of the corporation where the intention is to realize as much as possible from such property for the benefit of the creditors.

It is contended, however, that the name Burkhardt in the trade-mark is inseparable from it, and that as the name cannot pass to the purchaser neither can the trademark.

The case of The Snyder Mnfg. Co. v. Snyder, supra, in our judgment is conclusive upon this question. In that case a partnership having been dissolved and a receiver appointed, he was directed to sell the property of the firm "as a whole, including the good-will." The court held that the good will included the firm name, and the

purchaser as well as the corporation to whom the purchaser transferred his purchase had the right to use the firm name.

The following citation from the opinion of the court will sufficiently state its conclusion upon this question.

"We are not reluctant, therefore, in holding that upon the dissolution of a trading co-partnership, its assets, including the good-will of the business, may be sold as a whole, either by the parties directly or through a receiver under an order made by a court in a case to which they are parties, that a purchaser thereof under either method of sale is entitled to continue the business as the successor of the firm, and make use of the firm name for that purpose.

"And further, that where the purchaser transfers to a corporation of which he is a member, organized to succeed to the business, it may carry on the business in the same manner under a corporate name, including the name which had been used by the firm. Brass and Iron Works v. Payne 50 Ohio St. 115."

If under an order such as was made in this case, the purchaser has the right to use the firm name, it necessarily follows that the mere presence of a part of the firm name in a trade-mark does not operate to affect the passing of the trade-mark to the purchaser. And in this connection the court quotes with approval the case of Horton Mnfg. Co. v. Horton Mnfg. Co. 18 Fed. Rep. 819, where the federal court declares that, "If one has made of his own name a trademark, and then transfer to another his business in which his name has been so used, the right to continue such use of the name will doubtless follow the business as often as it may be transferred."

For the reasons above stated we are of the opinion that the plaintiff is entitled to a perpetual injunction as prayed for in the petition.

Hunt, J., and Jackson, J., concur.
Kittredge & Wilby, for Plaintiff.
C. W. Baker, for Defendant.