# MACWILLIAM v. PRESIDENT SUSPENDER COMPANY.

# MACWILLIAM v. PRESIDENT SUSPENDER COMPANY.

TRADEMARKS; SALE; LICENSE.

1. The transfer of a business with its good will, either by sale or license, carries with it a trademark used in connection therewith, whether expressly mentioned in the instrument of transfer or not.

2. Where the owner of a trademark grants the right to another, either by sale or license, to use the mark on the goods with which its use is connected and abandons its use himself, he cannot afterwards either deprive his assignee of the right to its use or set up an adverse use. By use in connection with the business the assignee acquires the title abandoned by the assignor, and the title is of that exclusive character which is entitled to protection even against the assignor.

3. An application for the registration of a mark as a trademark is properly denied on opposition, and a petition by the opposer for the cancelation of a previous registration by the applicant of the same mark is properly granted, where it appears that the applicant, many years before the date of his application, sold to the opposer his business of manufacturing the article to which the mark was applied, and granted to the opposer an exclusive license to manufacture and sell the article under a patent granted to him, and at the request of the opposer procured the registration of the mark; that after such sale the opposer continued to manufacture the article and use the mark, and that the applicant after the expiration of the patent resumed the business of manufacturing the article and the use of the mark in competition with the opposer.

Nos. 1051 and 1052. Patent Appeals. Submitted November 15, 1916. Decided February 5, 1917.

HEARING on appeals from two decisions of the Commissioner of Patents, one sustaining an opposition to the registration of a mark as a trademark, and the other canceling the registration of a mark as a trademark. *Affirmed.*

Note.—On sale of trademark, generally, see comprehensive note in 1 L.R.A. (N.S.) 704.

The Court in the opinion stated the facts as follows:

This is an opposition proceeding brought by appellee, President Suspender Company, to the registration by appellant, Hugh G. Macwilliam, of the trademark "President" for suspenders, on an application filed June 26, 1914. Appellee company also filed a petition for the cancelation of a registration of said mark to Macwilliam under date of May 16, 1899. By consent, the two cases have been heard together. The Examiner of Interferences sustained the opposition, and recommended the cancelation of the 1899 registration. These decisions were affirmed by the Commissioner of Patents, from which this appeal was taken.

It appears that a patent for a certain style of suspender was granted to appellant on August 16, 1898. Appellant was at that time engaged in manufacturing the patented suspenders, and had adopted and used as a trademark thereon the word "President," printed across a red, white, and blue banner. The mark has always been used in connection with this emblem. On October 1, 1898, appellant by written agreement gave an exclusive license to the C. A. Edgarton Manufacturing Company, which subsequently became the appellee company, to manufacture and sell suspenders containing his patented improvements. The license contract carried with it all orders for suspenders then on hand and all stock, machinery, and material which the licensor had, and contained a provision whereby the "said party of the first part agrees to, and he does hereby, turn over and transfer to the party of the second part, the good will of his present business of manufacturing and selling said suspenders within the United States, and all orders he now has or may hereafter take within the United States for the said suspender." Under the terms of the contract the license was to continue during the life of the patent, unless sooner terminated under conditions which we need not consider, since the contract was not terminated.

The sole question here is whether the license and good will of the business carried the trademark with it. It was more

than six months after the license was granted and appellant had suspended the business of manufacturing and selling "President" suspenders that he procured in the Patent Office, at the request of appellee's predecessor, the registration of the mark. At no time during the life of the patent did appellant manufacture suspenders, or use the mark in controversy. On the other hand, appellee continued during that period to manufacture the patented article and use the mark. It spent $750,000 in advertising the goods manufactured, sold between thirty and forty million pairs of the suspenders, and paid appellant about $500,000 in royalties. The patent expired on August 16, 1916, and appellant again resumed the business of manufacturing "President" suspenders, and again resumed the use of the mark: hence this action.

*Mr. W. P. Preble* for the appellant.

*Mr. Odin Roberts, Mr. A. V. Cushman, Mr. Robert Cushman,* and *Mr. Charles D. Woodberry* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Nothing seems to be better established in the law of trademarks than that where the owner of a trademark grants the right to another, either by sale or license, to use the mark on the goods with which its use is connected and abandons its use himself, he cannot afterwards either deprive his assignee of the right to its use or set up an adverse use. By use in connection with the business the assignee acquires the title abandoned by the assignor, and the title is of that exclusive character which is entitled to protection even against such assignor. *Buffalo Rubber Mfg. Co. v. Batavia Rubber Co.* 90 Misc. 418, 153 N. Y. Supp. 779; *Huff v. Wallace,* 88 N. J. L. 452, 97 Atl. 45.

In the Batavia Rubber Case, the plaintiff manufactured tires and called them "Security Tread." It gave defendant a license to make tires and call them "Security" tires. Upon failure of defendant to pay the royalty as agreed, plaintiff attempted to en-

join the use of the word "Security." The court, denying relief, said: "The plaintiff, when it permitted or gave to the defendant the privilege to use the word in connection with tires made by it virtually abandoned the right to claim that the word 'Security' in any sense indicated tires manufactured by the plaintiff. It waived and abandoned the use of the word as indicative of origin or ownership."

It is likewise well settled that the conveyance of a business with its good will, either by sale or license, carries with it a trademark used in connection therewith, whether expressly mentioned in the instrument or not. *Merry v. Hoopes,* 111 N. Y. 415, 18 N. E. 714; *Corbett Bros. Co. v. Reinhardt-Meding Co.* 77 N. J. Eq. 7, 76 Atl. 243; *Myers v. Kalamazoo Buggy Co.* 54 Mich. 215, 52 Am. Rep. 811, 19 N. W. 961, 20 N. W. 545; *Allegretti v. Allegretti Chocolate Cream Co.* 177 Ill. 129, 52 N. E. 487. In the Corbett Case, where by a sale of the entire assets of the partnership everything pertaining to the business was conveyed, the New Jersey court said: "The transfers were effective to convey to the complainant the trademarks of the partnership, and if the color numbers are part of the trademarks the use of them by defendant company is an infringement of complainant's property rights derived under the two bills of sale." In the Allegretti Case the court said: "The transfer of the property and effects of a business carries with it the exclusive right to use such trademarks or tradenames as have been used in such business. *Snyder Mfg. Co. v. Snyder,* 54 Ohio St. 86, 31 L.R.A. 657, 43 N. E. 325; *Williams v. Farrand,* 88 Mich. 473, 14 L.R.A. 161, 50 N. W. 446; *Fish Bros. Wagon Co. v. La Belle Wagon Works (Fish Bros. Wagon Co. v. Fish)* 82 Wis. 546, 16 L.R.A. 453, 33 Am. St. Rep. 72, 52 N. W. 595; *Merry v. Hoopes,* 111 N. Y. 415, 18 N. E. 714; *Feder v. Benkert,* 18 C. C. A. 549, 44 U. S. App. 99, 70 Fed. 613."

Inasmuch as appellant had no right to use the mark, having parted with that right at the date when he applied for the earlier registration in 1899, and had no such right when he filed the present application, it follows that the opposition must be sustained. A trademark right depends upon use. Appellant not

only ceased to use the mark, but parted with the business with which its use was connected. Title to the mark could not exist apart from the business, and the contract contained no provision by which appellant could recover the business, and without the business no right existed in the mark. The license extended during the life of the patent. The invention then became public, and appellee could continue the business which it acquired and the use of the mark in connection therewith.

Appellant, when he conveyed the business to which the mark belonged, conveyed with it the right to use the mark, and when appellee's right to continue the business became absolute with the expiration of the patent, it had acquired a title to the use of the mark of which it could not be devested by appellant after an abandonment of actual use by him for almost eighteen years. Appellant's title was not such that he could convey it to appellee, abandon the use of the mark, and, after this long lapse of time, regain the use in derogation of the right of appellee company. All the title appellant ever had in the mark was a right to use it in the particular business to which it belonged. Registration confers no higher title. As was said by the court in *Thomas G. Carroll & Son Co.* v. *McIlvaine & Baldwin*, 171 Fed. 125: "The owner of a trademark has no estate in the trademark as such, nor does registration confer upon him any monopoly. His position bears no resemblance to that of a patentee. He is entitled to legal protection for his trademark only because by granting the same the courts protect the business designated or indicated to the public mind by the trademark."

It may well be that had appellee company defaulted in its contract, and the business had reverted to appellant before the expiration of the patent and the contract, the right to the use of the mark would also have reverted; but this did not occur, and appellee, succeeding to the right with the expiration of the patent to continue the manufacture of the goods, cannot be deprived of the mark which it acquired from appellant in the fulfilment of its contract in good faith. It is entitled to use it so long as it continues in the business to which the mark belongs.

The decision of the Commissioner of Patents is affirmed,

and the clerk is directed to certify these proceedings as by law required.                                    *Affirmed.*

Mr. Justice Gould, of the Supreme Court of the District of Columbia, sat with the Court in the hearing and determination of this appeal, in the place of Mr. Chief Justice Shepard.