## PFLEGHAR HARDWARE SPECIALTY CO. v. BLAIR, Commissioner of Internal Revenue.

Circuit Court of Appeals, Second Circuit. February 4, 1929.

No. 117.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The tax is laid under the Revenue Act of 1918 (40 Stat. 1057). By section 230 corporations are taxed upon their "net income," which is declared to mean gross income, as defined in section 233, less authorized deductions. By section 233 the definition of gross income is referred back to section 213. That section provides:

"Sec. 213. That for the purposes of this title * * * the term 'gross income'—(a) Includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also * * * gains or profits and income derived from any source whatever. * * *"

Also pertinent is section 202, which reads:

"Sec. 202 (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date. * * *"

Under the authority conferred by section 1309 regulations for the enforcement of the act have been adopted. Article 41 of Regulations 45, Edition 1920, as amended by Treasury Decision 3206, provides:

"Art. 41. *Sale of Good Will.*—Any profit or loss resulting from a sale of good will can be taken only when the business, or a part of it, to which the good will attaches is sold, in which case the profit or loss will be determined upon the basis of the cost of the assets, including good will. If the good will was acquired prior to March 1, 1913, the taxable gain or deductible loss should be ascertained in accordance with the provisions of article 1561 as amended. If nothing was paid for good will acquired after February 28, 1913, no deductible loss with respect thereto is possible, although on the other hand, upon the sale of the business there may be a profit. It is immaterial that good will may never have been carried on the books as an asset, but the burden of proof is on the taxpayer to establish the cost or fair market value on March 1, 1913, of the good will sold."

And article 1561 as amended is as follows:

"Art. 1561. *Basis for Determining Gain or Loss from Sale.*—For the purpose of ascertaining the gain or loss from the sale or exchange of property the basis is the cost of

Henry F. Parmelee, of New York City, Harry A. Fellows, of Washington, D. C., and Curtiss K. Thompson, of New Haven, Conn., for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen. (Sewall Key and Andrew D. Sharpe, Sp. Asst. Attys. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for appellee.

such property, or if acquired on or after March 1, 1913, its cost or its approved inventory value. But in the case of property acquired before March 1, 1913, when its fair market value as of that date is in excess of its cost, the gain which is taxable is the excess of the amount realized therefor over such fair market value. Also in the case of property acquired before March 1, 1913, when its fair market value as of that date is lower than its cost, the deductible loss is the excess of such fair market value over the amount realized therefor. No gain or loss is recognized in the case of property sold or exchanged (a) at more than cost but at less than its fair market value as of March 1, 1913, or (b) at less than cost but at more than its fair market value as of March 1, 1913. In any case proper adjustment must be made for any depreciation or depletion sustained. What the fair market value of property was on March 1, 1913, is a question of fact to be established by any evidence which will reasonably and adequately make it appear. * * *"

The appellee maintains that the order of the Board of Tax Appeals may be sustained upon each of the following grounds: (1) That the taxpayer had no good will to sell; (2) that, if it had good will, such good will was not sold; (3) that, if good will existed and was sold, there was no proof of its value as of March 1, 1913; and (4) that no proof was made of the original cost of such good will, and such proof is necessary. These arguments will be considered in the order stated.

The first contention is based upon the thesis that to possess good will a business concern must be favorably known to the public generally, and not merely to a single customer. It is true that the definitions of good will most frequently quoted refer to the good disposition of "old customers" (in the plural), or to the advantage arising from "general public patronage and encouragement." See Lord Eldon, in Bruttwell v. Lye, 17 Ves. Jr., 335, 346; Justice Story, in Story on Partnership, § 99. Compare, however, Menendez v. Holt, 128 U. S. 514, 521, 9 S. Ct. 143, 32 L. Ed. 526. But no court has held, so far as we know, and we are not disposed to lay down the doctrine, that a business can possess no good will when its entire output has been taken for a long series of years by a single customer. If the patronage of such customer is based upon the convenient location of a manufacturer's factory, his efficient organization of skilled workmen, and the merit of his product, and not merely upon personal friendship between the manufactur-

er and his customer, then there is every reason to expect that the customer will continue to trade at the same place, and this is true, though the factory be sold to a new owner. Such expectancy has value. In the words of Judge Cardozo: "Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition." Matter of Brown, 242 N. Y. 1, 6, 150 N. E. 581, 582 (44 A. L. R. 510). Such expectancy, whether the customers be many or one, gives value to a going business over and above the value of the tangible assets and money employed in it, and is within the definition of good will approved by Fuller, C. J., in Menendez v. Holt, 128 U. S. 514, 522, 9 S. Ct. 143, 144 (32 L. Ed. 526):

" * * * It [good will] must mean every positive advantage that has been acquired by the old firm in the progress of its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business."

The Board of Tax Appeals made no express finding that the Pfleghar Company possessed a good will, though the opinion intimates that it owned an "intangible asset," which "was conveyed to the purchaser of the plant, as an incident of the plant." The testimony shows that the English & Mersick Company had dealt with the Pfleghar Company and its predecessor partnership for nearly 40 years, and that the reasons for such patronage were the convenience of their location, the skill of their workmen, and the prompt and satisfactory manner in which they filled orders. Mr. Kennedy, the president of the customer, testified that he never had any thought of doing anything other than continuing to give them his patronage. The evidence justifies no other conclusion than that the taxpayer possessed a good will on March 1, 1913, and on the date of sale of the plant in 1919.

The second argument is that such good will was not sold. The taxpayer contends that this question is not before us, because the board's opinion states:

" * * * We hold that, in the sale of the plant, whatever intangible asset petitioner owned in 1919 was conveyed to the purchaser of the plant as an incident of the plant."

This finding is somewhat ambiguous; but there is a definite finding of fact that the purchaser "agreed to pay for said plant as a whole, as a going concern, $300,000," exclusive of inventoried merchandise. Good will

has no existence except in connection with a going business; it cannot be separated from the going business to which it is incident. A seller who disposes of his manufacturing plant as a going concern necessarily parts with all those advantages which are inherent in conducting an established business at that plant; in other words, parts with his good will. See Lane v. Smythe, 46 N. J. Eq. 443, 450, 19 A. 199; Brass & Iron Work v. Payne, 50 Ohio St. 115, 117 (33 N. E. 88, 19 L. R. A. 82); Merry v. Hoopes, 111 N. Y. 415, 420, 18 N. E. 714; Boggs v. Friend, 77 W. Va. 531, 87 S. E. 873, 875; and cases collected in 28 C. J. 738. In Didlake v. Roden Grocery Co., 160 Ala. 484, 495, 49 So. 384, 387 (22 L. R. A. [N. S.] 907, 18 Ann. Cas. 430), it is said:

" * * * But the authorities are clear to the effect that, if a business is sold out entirely and nothing is said about good will, it goes with the property. This necessarily results from the fact that the good will cannot exist except in connection with the business."

The evidence is ample to sustain the finding that the plant was sold as a going concern. Mr. Curtis, who negotiated the sale for the seller, testified:

"The plant was delivered as a going concern without loss of time and with it went the personnel, the foremen and operatives, and everything that the Pfleghar Hardware Specialty Company had. The business was not shut down and was not out of production prior to the sale. * * * Nothing specific regarding the value of the good will of the business is mentioned in the contracts. * * * But, certainly whatever was sold, the good will went to the English & Mersick Company. If you ask me the value of that good will, I do not know; but whatever was there we certainly sold."

Mr. Kennedy, of the purchaser, says:

"There was no question but that we took this over as a going concern, with all that went with it. * * * When we took this plant over, it was with an understanding that the Pfleghar Hardware Specialty Company was selling out and going out of business; that we were buying their assets and as a manufacturing concern they were going into liquidation. * * * We paid more for their assets than they were worth as assets, unless there was an earning capacity as a going concern included."

From the foregoing it is apparent that the subject of sale was a manufacturing plant in production as a going concern. Consequently the board's holding that the petitioner conveyed whatever intangible asset it owned in 1919 as an incident to the plant is correct, and is equivalent to a finding that petitioner sold its good will.

It is urged that the price paid by the purchaser was not greatly more than the market value of the tangibles, and hence it cannot reasonably be inferred that the seller included an asset which it argues was worth at least $113,888 on March 1, 1913. This argument would have weight, were it possible for the seller to retain the good will while selling the plant as a going concern. The seller, however, had determined to liquidate its business. The only prospective purchaser was English & Mersick Company, who, as a trading point, suggested that they were considering opening a department of their own which would deprive the Pfleghar Company of "quite a bit" of the work it was then doing for them. Under these circumstances, the seller might be willing to part with its good will at a price much less than its 1913 value.

Having determined that good will was owned on March 1, 1913, and was sold in 1919, it remains to determine whether proof of its value on March 1, 1913, was given. A formula for the computation of good will values was set forth in Appeals and Review Memorandum 34. See 2 C. B. 31; Montgomery, Income Tax Proc. 1926, vol. 1, p. 880. Similar formulæ have been recognized by the courts in computing values for inheritance tax purposes. In re Dupignac's Estate, 123 Misc. Rep. 21, 204 N. Y. S. 273, 281; In re Hall's Estate, 94 N. J. Eq. 398, 119 A. 669, 673; Prentice Hall, Inheritance Tax Service, 1927–29, vol. II, p. 153. The value of tangible assets in the business, the annual net income for a series of years ending December 31, 1912, and the nonhazardous character of the business having been proved, the value of good will on March 1, 1913, can be established by applying the recognized formula.

It is urged that no witness testified as to the value of the good will in 1913. In the absence of an actual sale, such testimony of value can be but an opinion, and can only be formed by taking into account the same financial history as the board had before it, and applying some such formula as that approved by the Tax Bureau. The absence of opinion testimony is not, therefore, important. See Otis Steel Co. v. Commissioner, 6 B. T. A. 358.

The taxpayer asked only for a finding of a 1913 value for good will of not less than $113,888.25. Such a finding should have been made. See Chicago Ry. Equip. Co. v. Blair, 20 F. (2d) 10, 14 (C. C. A. 7). It would have resulted in the conclusion that the price at

which the plant as a going concern was sold in 1919 was no greater than its value on March 1, 1913. Hence no taxable profit was realized upon the sale..

The last point is the contention that it was necessary for the taxpayer to prove, not only the 1913 value, but the cost, of its good will. Concededly it did not prove the latter. United States v. Flannery, 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865, and McCaughn v. Ludington, 268 U. S. 106, 45 S. Ct. 423, 69 L. Ed. 868, are relied upon to show that it must do so. These cases hold that the cost, rather than the 1913 value, must be proven when a loss by reason of sale is to be deducted. In the case at bar the taxpayer seeks to deduct no loss. It asserts merely that there was no gain realized on the sale. The thing sold was a going business. If the taxpayer establishes the 1913 value of the property sold, and shows that the price received for it in 1919 was no greater, there is no taxable gain. Taxable gain is ascertained by deducting from the sale price the cost or the March 1, 1913, value, whichever is the greater. Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758; Walsh v. Brewster, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762. Since deduction of the 1913 value from the sale price shows there was no gain, and, since the taxpayer seeks to deduct no loss, the element of cost is immaterial. See Audubon Park Realty Co. v. Commissioner, 6 B. T. A. 875.

For the foregoing reasons, the order of the Board confirming action of the Commissioner in assessing the deficiency tax was erroneous. The order is reversed, and the cause remanded for further proceedings in conformity with this opinion.

MANTON, Circuit Judge, concurs in the result.