Ushco Manufacturing Company, Inc. v. Commissioner.
Ushco Mfg. Co. v. Commissioner
Docket No. 4979.
United States Tax Court
1945 Tax Ct. Memo LEXIS 273; 4 T.C.M. (CCH) 296; T.C.M. (RIA) 45090; March 10, 1945
*273 W. W. Spalding, Esq., Tower Bldg., Washington, D.C., for the petitioner. Sidney B. Gambill, Esq., for the respondent. HARRON Memorandum Opinion HARRON, Judge: The respondent determined deficiencies in income tax, declared value excess profits tax, and excess profits tax for the taxable years ending June 30, 1941, and June 30, 1942, as follows: Declared
Value
Excess
Excess
Year
Income Tax
Profits Tax
Profits Tax
1941
$261.27
$165.55
$25,023.21
1942
26,984.93 Only so much of the deficiencies is in controversy as arises from the exclusion by the respondent from the petitioner's invested capital of the amount of $496,200 claimed on account of intangibles paid in for petitioner's common stock. Petitioner filed its returns for the taxable years with the collector for the 28th district of New York. Findings of Fact The facts have been stipulated and are hereby found accordingly. Only those stipulated facts material to the issue are set forth herein. The petitioner is a New York corporation with its principal office in Buffalo, New York. It keeps its books and files its returns on an accrual basis. The petitioner *274 was organized in 1901 under the name of the U.S. Hame Company, which name was subsequently changed to that of the Ushco Manufacturing Company. Its business for the years involved in this proceeding was that of the manufacture and sale of hames and saddlery products. In July 1902, petitioner acquired the assets, tangible and intangible, of the following corporations engaged in the business of manufacturing hames and saddlery products, viz: United Hame Company, Buffalo, New York Consolidated Hame Company, Andover, New Hampshire
J. A. De Armond Mfg. Company, Cincinnati, Ohio
Herman Bros. & Company, Tell City, Indiana
Thereafter, in November 1905, petitioner similarly acquired the assets, tangible and intangible, of the Auburn Hame Company, Auburn, New York. In July 1902, common stock of the petitioner in the amount of $800,000 par value was issued to the several corporations named for their intangible assets as follows: Shares
Herman Bros. & Company
532
$53,200
J. A. De Armond Mfg. Co.
802
80,200
United Hame Company
2,998
299,800
Consolidated Hame Co.
3,668
366,800
TOTALS
8,000
$800,000
In November 1905, there was similarly issued to *275 the Auburn Hame Company for its intangibles 700 shares of the common stock of the petitioner, having a par value of $70,000. Before the common stock of petitioner was so issued for intangible assets, there were negotations between the parties to the transaction which extended over a considerable period of time and which culminated in the summer of 1902. The parties sat around a table and discussed among themselves the value of their respective assets, including the intangible assets. There was also appointed an appraisal committee consisting of a representative of each of the parties. In the summer of 1902, this committee visited the plants and offices of the corporations involved in the transaction, inspected the physical assets of those corporations, and ascertained the amount of the earnings of each of the companies for the period of 3 1/2 years immediately prior to July 1902. Up to this time, there had been no relationship, business or otherwise, between the respective corporations. Petitioner also acquired from the constituent companies tangible assets consisting of real estate, plants, inventories, and cash. For such tangible assets petitioner issued, in the aggregate, $535,000 *276 of 6% preferred stock and $160,000 of 5% bonds. The respondent, in the determination of the deficiency in this case, has allowed a valuation of the aforesaid tangible assets in the amount of $695,000 and this determination is not in issue. Each of the companies, whose intangible assets were acquired by petitioner as hereinbefore stated, had been in existence for more than five years prior to such acquisition by petitioner. The average net earnings for the period of three and one-half years immediately prior to July 1902, of all said companies including petitioner, was between $110,000 and $115,000 per annum. The value of the tangible assets during the said period of 3 1/2 years was $695,000. In computing the petitioner's invested capital for each of the taxable years, respondent has disallowed $496,200 of the $870,000 par value of petitioner's common stock issued for such intangibles as hereinbefore set forth. The value of the intangibles acquired by petitioner by the issuance of its common capital stock in 1902 and 1905 was $373,800. Opinion In its excess profits return for each of the taxable years, petitioner has claimed an excess profits credit based upon its invested *277 capital. In computing the credit, it has included in its invested capital the amount of $870,000 which it contends was the fair market value of intangibles paid in for its common stock in 1902 and 1905. Respondent has determined that the fair market value of the intangibles in those years was $373,800, based upon the following method of calculation: Average net income of constituent com-
panies for 3 1/2 years prior to 1902
$112,500
Less: 8% return on tangibles ($695,000
X 8%)
55,600
Earnings allocable to intangibles
56,900
Value of intangibles capitalized at 15.2
/ % ($56,900 X 100 / 15.2 / %)
373,800 This method of computing the value of intangibles was based upon the formula set forth in A.R.M. 34, C.B. 2 p. 31, which has been approved in Herald-Despatch Co., 4 B.T.A. 1096, 1107; Pfleghar Hardware Specialty Co. v. Blair, 30 Fed. (2d) 614, 617 (7 A.F.T.R. 8462); and Toledo Newspaper Co., 2 T.C. 794, 808. The determination of the issue involves a question of fact; namely, the fair market value of the intangibles paid in for petitioner's common stock in 1902 and 1905. That value must be determined on the basis of the *278 facts known at that time. Since there were no sales of petitioner's common stock in those years, we cannot assume, as requested by petitioner, that the value of the common stock was equivalent to its par value. Similarly, we cannot assume that the value of the intangibles was equivalent to the par value of the common stock. The fact that the parties to the merger were dealing at arm's length is not sufficient to establish that fact for the purposes of this proceeding. The case has been submitted on a stipulation of facts which is exceedingly limited. We do not know the nature of the intangibles; whether they consist of patents, formulae, trade-marks, contracts, or good will. We know nothing of the history of any of the companies involved in the transaction, their management, or the places which they occupied in the industry. Nothing is set forth in the stipulation which would indicate that any independent appraisal of the intangibles had been made. Although the parties may have been dealing at arm's length, it is conceivable that they might not have been interested in the amount of par value common stock issued to each company as long as such stock was issued in proportion to the respective *279 interests of each company. Respondent's determination of the value of the intangibles is presumptively correct. The burden of proving a greater value is upon petitioner. It has not sustained that burden. It did not even attempt by expert testimony to establish opinion evidence as to the value which it claimed. At best, it makes assumptions, which it has not established by competent evidence to have been the actual facts. Under these circumstances, we are of the opinion that the formula used by respondent is the only practicable way of establishing the fair market value of the intangibles paid in for petitioner's common stock in 1902 and 1905. Accordingly, Decision will be entered under Rule 50.